OTT, Judge.
The City of Clearwater (appellant) terminated the employment of appellee as Water Superintendent. Appellee was served with charges and specifications growing out of the allegedly improper administration of a water main extension contract. Allegations were made that appellee was incompetent and inefficient in the performance of his duties (charge I), was guilty of malfeasance or misfeasance (charge II) and had received gifts from the contractor during the life of the contract (charge III).
After a hearing the Civil Service Board of the City of Clearwater (hereinafter referred to as the Board) found that the evidence supported charge II, specification C and charge III as follows:
As to charge II, specification C:
[The appellee], in his position as Water Superintendent, did permit operators of backhoes and payloaders to be charged both as operators and as laborers, while being used in work associated with [the water main extension contract] resulting in excess charges of $50,000.
As to charge III:
That [the appellee] in his position as Water Superintendent has violated Rule 14, Section 1(1) of the Civil Service Rules, to wit: has taken for personal use a fee, gift or other valuable thing in the course of his work or in connection with it when such fee, gift or other valuable thing is given him by any person in the hope or expectation of receiving a favor or better treatment than that accorded other persons.
After finding that the evidence supported both charge II, specification C and charge III, the Board voted (3 to 2) to rescind the action of the appellant in dismissing the appellee and issued a one paragraph order which stated:
After considering the evidence and testimony presented by the employee and the Appointing Authority and after considering the testimony of witnesses and arguments submitted by counsel for the employee and the Appointing Authority, the Civil Service Board, by majority roll call vote rescinded the action of the Appointing Authority in the dismissal of the . employee, . . . in regard to Charge I, Charge II, and Charge III of the Termination and Dismissal Notice in that there was not just cause for such dismissal. Further the Civil Service Board, by majority roll call vote moved for the reinstatement of the employee with all back pay and benefits.
The appellant sought review in the circuit court by petition for a writ of certiorari. The circuit court denied the petition and affirmed the Board decision. We reverse.
The power of the executive to remove government employees has been the subject of comment and consideration from this nation’s beginning.
James Madison was a leading advocate of presidential power. His statement has remained the basic argument for the executive’s power of removal:
The danger to liberty, the danger of maladministration, has not yet been found to lie so much in the facility of introducing improper persons into office, as in the difficulty of displacing those who are unworthy of the public trust. If it is said that an officer once appointed shall not be displaced without the formality required by impeachment, I shall 'be glad to know what security we have for the faithful administration of the Government? Every individual, in the long chain which extends from the highest to the lowest length of the Executive Magistracy, would find a security in his situation which would relax his fidelity and promptitude in the discharge of his duty. 1 Annals of Cong. 496 (Gales ed. 1789)
Ultimately, Congress adopted the approach favoring executive authority, a result known as the “Decision of 1789.”
The next significant historical occurrence prompting renewal of the debate arose out • of Andrew Jackson’s flagrant and extensive application of the “spoils system.” Civil service reform grew in favor as a means of curbing the arbitrary and disruptive quadrennial turnover of government.
*1250 The relation of property to employment has been the subject of a very interesting article by Charles A. Reich in which he defined property as a “legal institution the essence of which is the creation and protection of certain private rights in wealth of any kind.” Reich, The New Property, 73 Yale L.J. 733, 771 (1964). Suffice it to summarize by saying that under the law of master-servant, employment was an “at will” relationship. Thus, in the absence of a specific statute or contract, the master could arbitrarily discharge his servant without interference from the courts. See, e. g., Pearson v. Youngstown Sheet & Tube Co., 332 F.2d 439 (7th Cir. 1964); Hablas v. Armour & Co., 270 F.2d 71 (8th Cir. 1959). It was a logical extension of the new property rights of the age. The standard governing the employment relationship was freedom of contract. In order to encourage individual initiative it was considered necessary to allow men to establish their own law through consent. See Tobriner & Grodin, The Individual and the Public Service Enterprise in the New Industrial State, 55 Calif.L.Rev. 1247, 1249 (1967).
Unfortunately, what evolved was the subjugation and exploitation of the working class. Employers were allowed to exercise dominion over their employees without any corresponding protection of or regard for the employee’s interest. Absolute freedom enabled unconscionable employers to place intolerable conditions upon their employees. Thus, organized labor in the private sector and civil service reform in the area of government employment stemmed from such conditions.
Originally, public employment was regarded as a privilege not a right. The basic concept was that government had unlimited power over its employees because government employment was a privilege and not a right. This approach or attitude was perhaps most pointedly expressed by Mr. Justice Holmes, in McAuliffe v. City of New Bedford, 155 Mass. 216, 29 N.E. 517 (1892) where he concluded that “[t]he petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.” 29 N.E. at 517.
Gradually, the courts intervened in instances of extreme injustice and eroded the right-privilege distinction, affording some protection to government employees. For example, in Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 543 (1971), the Supreme Court “rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a ‘right’ or as a ‘privilege’.” Cf. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) [involving unemployment benefits].
The final product and the essential limitations of executive power to hire and fire are now found in legislative enactments applicable to all levels of government employment.
Therefore, the basic issue in this case is one of statutory construction. Section 20 of Chapter 21153, Laws of Florida, Special Acts of 1941, was enacted by the legislature of Florida as the Civil Service Law of the City of Clearwater. By its broad grant the original act seems to have vested the Board with the right to independently decide whether or not an employee could be administratively discharged as a result of disciplinary actions. Apparently conceiving this grant a bit too supplantive of executive power, the legislature amended Section 20 in Chapter 24431, Laws of Florida, Special Acts of 1947, and Section 12 of Chapter 25731, Laws of Florida, Special Acts of 1949. As amended, it now provides in pertinent part as follows:
The Board shall, after due consideration, render its administrative determination affirming, disaffirming or modifying the act of the appointing authority.
The Board may order reinstatement of an employee only if the hearing establishes that the removal was made for reasons other than just cause. (Emphasis supplied.)
The latter more specific provision acts as a limitation upon the former more general grant. See Bryan v. Landis, 106 Fla. 19, 142 So. 650 (1932). In essence, the broad scope of review granted to the Board in *1251 1941 was specifically limited in reinstatement cases by the “just cause” standard of review as redefined in 1947 and 1949.
In Blackburn v. Brorein, 70 So.2d 293, 299 (Fla.1954) the court stated that:
Civil Service laws for public employees have been widely approved and such laws have served a most useful purpose in giving to such employees security and protection.
Moreover, it was held in State ex rel. McIver v. Swank, 152 Fla. 565, 12 So.2d 605, 607 (1943) that:
[T]he salutary purpose of all civil service laws is to safeguard the faithful, honest and competent employee or official from removal for unworthy causes .
We could not agree more with these expressions of the very worthy purposes for which civil service came into being and the type of employee it was designed to protect. However, as the legislature so wisely concluded, there must be a balance between protecting individual employee rights on the one hand and enforcing a proper level of competency and performance on the other. Public hiring authorities must have some latitude and power in personnel actions. Where such flexibility and power does not exist situations arise in which there exists a permanence of tenure in the public service which is inconsistent with the efficiency of that service. See 19 U.S. Civil Service Commission Ann. Rep. 18 (1902).
Civil service and its “just cause” standard are valid and necessary limitations upon the common law right to hire and fire. However, the antidote may be worse than the disease. It is very difficult to fire a civil service employee today. As a result, the productivity of government workers is far less than their counterparts in private industry. The problem lies in “the inability of the manager to discipline nonproductive or insubordinate employees or to dismiss those who have ceased to be productive or constitute chronic supervisory problems.” J. Macy, Public Service: The Human Side of Government 20 (1971).
Without abrogating the rights of hardworking employees, we must still preserve the indispensable right of the employer to hire and fire within acceptable limits. As was pointed out in Florida Department of Health & Rehabilitative Services v. Career Service Commission, 308 So.2d 597, 598 (Fla. 1st DCA 1975):
Government is becoming increasingly large a,nd unwieldy. A significant portion of the taxpayers’ dollar goes to pay government employees. Taxpayers, via their government, are entitled to have their employees perform a day’s work for a day’s pay.
See State Department of Pollution Control v. State Career Service Commission, 320 So.2d 846 (Fla. 1st DCA 1975). In the State Department of Pollution Control case the court held that “the role of the Career Service Commission on appeal is to determine whether there existed competent substantial evidence to sustain the action taken by the agency (meaning the hiring authority) and whether the facts established ‘just cause’.” 320 So.2d at 848. The court noted that the hiring authority has “the sole discretion to determine whether the employee is to be dismissed or suspended . the only limitation being that the disciplinary action must be for just cause.” 320 So.2d at 848. Likewise, the First District Court of Appeal recently held that once just cause was established it was the prerogative of the hiring authority — not the Career Service Commission — to determine the disciplinary action to be taken. Collins v. Florida Department of Offender Rehabilitation, 355 So.2d 131, Case No. GG-364 (Fla. 1st DCA, filed January 26, 1978). See Florida A & M University v. Lewis, 327 So.2d 862 (Fla. 1st DCA 1976); State Department of Administration v. Hunter, 323 So.2d 24 (Fla. 1st DCA 1975).
In the instant case the Board exceeded its authority. There was competent substantial evidence in the record to support a “just cause” termination of the ap-pellee. The Board’s own findings mandate such a conclusion. In the face of such findings, the Board had no authority to reinstate the appellee. Bee City of Clearwater v. Garretson, 204 So.2d 46 (Fla. 2d *1252 DCA 1967). There is nothing in the record or in the Board’s deliberations which supports the conclusion that the appellee was dismissed for reasons other than just cause.
The Board merely concluded that “there was not just cause for such dismissal.” We hold that the legislative requirement that reinstatement be ordered “only if the hearing (evidence) establishes that the removal was made for reasons other than just cause” was not met.
Appellee contends that rule 14 of the Board’s rules and regulations is authority for affirming. That rule states:
The Board may order the reinstatement of an employee only if the hearing establishes that the suspension, demotion, or dismissal was made for reasons other than just cause. In arriving at its determination of “just cause” as used in this section, the Board shall carefully consider all testimony and evidence presented and shall additionally give careful consideration to the appellant employee’s entire personal record which shall be deemed cumulative.
Of course, the first sentence is nothing more than a restatement of the statute. The second sentence cannot change the statutory basis for reinstatement. In Forehand v. Board of Public Instruction, 166 So.2d 668 (Fla. 1st DCA 1964), the court held:
It is true that a rule or regulation of an administrative board is deemed prima fa-cie reasonable and valid, but that prima facie character is overcome upon it being made to appear that the rule or regulation is clearly contrary to, or exceeds, the provisions of the act by which the administrative board is created. 166 So.2d at 672.
See Edgerton v. International Company, 89 So.2d 488 (Fla.1956). Accordingly, to the extent the rule of the Clearwater Civil Service Board is considered an expansion of the authority granted by the statute to the Board, the rule can have no effect. The clear command of the statute that “the Board may order reinstatement of an employee only if .the hearing establishes that the removal was made for reasons other than just cause” controls.
The order of the Civil Service Board of Clearwater rescinding the order of dismissal and ordering reinstatement of the discharged employee with all back pay and benefits is quashed and set aside. The original order of dismissal of the City of Clear-water is reinstated and affirmed. The order of the trial court denying the certiorari is
REVERSED.
BOARDMAN, C. J, and GRIMES, J, concur.