508 So.2d 317 (1987)
DEPARTMENT OF CORRECTIONS, et al., Appellants, Cross/Appellees,
v.
FLORIDA NURSES ASSOCIATION, Appellee, Cross/Appellant.
No. 68986.
Supreme Court of Florida.
May 7, 1987.
Rehearing Denied July 13, 1987.
Robert A. Butterworth, Atty. Gen., Mitchell D. Franks, Chief Trial Counsel, and Arden M. Siegendorf, and George Drumming, Jr., Asst. Attys. Gen., Tallahassee, for appellants, cross/appellees.
Rhea P. Grossman, of Law Offices of Rhea P. Grossman, P.A., Miami, for appellee, cross/appellant.
SHAW, Justice.
The First District Court of Appeal has certified a trial court order as passing on the following question of great public importance requiring our immediate resolution:
WHETHER CHAPTER 85-318, LAWS OF FLORIDA, CREATING THE SELECTED PROFESSIONAL SERVICE,[1] MAY BE CONSTITUTIONALLY APPLIED TO STATE EMPLOYEES WHO HAD PERMANENT STATUS IN THE CAREER SERVICE SYSTEM AS OF OCTOBER 1, 1985? (Footnote added.)
*318 We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
The trial court found as follows:
1. The 1985 session of the Florida Legislature passed House Bill 1304, enacted as Ch. 85-219, Laws of Florida, and committee substitute for Senate Bill 670, enacted as Ch. 85-318, Laws of Florida. The former enactment became effective July 1, 1985 and purported to exempt from the Career Service System those physicians employed by the DOC and the HRS. Ch. 85-318 which became effective on October 1, 1985, was much more comprehensive than Ch. 85-219. It, too, exempted state employed physicians from the Career Service System and likewise exempted attorneys from the Career Service System. Additionally, it created a new category of state service called the Selected Professional Service (SPS) into which the exempted attorneys and physicians were included.
Among the exempted physicians are members of the professional health care unit for collective bargaining purposes, many of whom are also members of the Florida Nurses Association (FNA), that unit's bargaining representative... .
The FNA positions are covered by a collective bargaining agreement which will expire on June 30, 1987.
.....
Sec. 14 of Art. III requires that "there shall be a civil service system for state employees, except those expressly exempted." Pursuant to the above exemption language, the Legislature has from time to time over the years exempted certain positions from the Career Service System. (See Sec. 110.205(2) generally.) In Part 2 of Ch. 110, F.S. are contained various statutory provisions relating to the Career Service System including Sec. 110.227 which provides in pertinent part that "(A)ny employee who has permanent status in the Career Service may only be suspended or dismissed for cause." Sec. 110.227(1). .. . Provision is also made for a hearing before the State Career Service Commission for a permanent status employee dismissed from state service. Sec. 110.227(5)(a)[.]
The newly created Selected Professional Services Category of the State Civil Service to which all attorney [except attorneys serving as hearing officials] and doctor positions have been transferred makes no provision for dismissal for cause nor does it contemplate any hearings for aggrieved physician or attorney employees. Since October 1, 1985, at least, doctors and lawyers employed by the state, even those who had attained permanent Career Service status, have served at the pleasure of their agency head.
.....
The legislative purpose sought to be achieved in exempting doctors and lawyers from Career Service and placing them in the Selected Professional Services Category is set out in full in Sec. 110.601., F.S. In pertinent part that Section provides that the State's interests will best be served by a system of personnel management which "ensures ... the delivery of high quality performance ... by facilitating the State's ability to attract and retain qualified personnel in these positions, while also providing sufficient management flexibility to insure that the work force is responsive to agency needs."
To achieve this purpose, all state employed doctors and lawyers, probationers and permanent employees alike, were `exempted' from Career Service and transfered en masse to the new category of state service. (Emphasis in original, footnote omitted.)
The trial court held in pertinent part:
1. The establishment by the Legislature of the Selected Professional Services and the assignment of State employed physicians and attorneys to that category of State service is hereby specifically upheld,
(a) as to all physicians and attorneys who have been hired after October 1, 1985;

*319 (b) as to all physicians and attorneys who had not earned permanent status in career service as of October 1, 1985;
(c) as to all persons in the affected classes who had achieved permanent status in the State Career Service System as of October 1, 1985, and who affirmatively choose assignment to the Selected Professional Services after being fully advised of the advantages and disadvantages of such assignment.
2. While the state may assign all state employed physicians and attorneys to the Selected Professional Services category for bookkeeping purposes if it chooses to do so, no state employed physician or attorney who had achieved permanent status in the Career Service System prior to October 1, 1985, may be suspended or discharged except for cause nor may they or any of them be denied the protections afforded in Secs. 110.227 and 110.309, F.S., or any other statutory section designed to protect the rights of permanent state employees.[2] (Footnote added.)
Appellants argue that chapter 85-318 is a legitimate exercise of legislative authority. Appellee asserts, however, that the en masse reclassification of physicians from Career Service to Selected Professional Service is an unconstitutional violation of substantive due process and equal protection guarantees. The parties agree that there is no fundamental right or suspect class involved and that the rational basis test should be applied in determining the validity of chapter 85-318.[3] Thus, the legislation here must be upheld if it bears a rational and reasonable relationship to a legitimate state objective and is not arbitrary or capriciously imposed. See Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365 (Fla. 1981); In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980); United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla. 1979); and Golden v. McCarty, 337 So.2d 388 (Fla. 1976).
The stated purpose of chapter 85-318 is to create a personnel management system which "ensures ... the delivery of high quality [attorney and physician] performance ... by facilitating the State's ability to attract and retain qualified personnel in these positions." Ch. 85-318, Laws of Fla. The legislature seeks to achieve this goal by providing greater pay and benefits to Selected Professional Service members than are provided to Career Service members. Additionally, the legislature seeks to create a work force responsive to agency needs by providing that the personnel shall work at the pleasure of their agency head. These means are reasonably related to the legislature's goal of creating a highly qualified and responsive staff of selected professionals. "[W]e do not concern ourselves with the wisdom of the Legislature in choosing the means to be used, or even with whether the means chosen will in fact accomplish the intended goals; our only concern is with the constitutionality of the means chosen." Lasky v. State Farm Insurance Co., 296 So.2d 9, 15-16 (Fla. 1974). "The Legislature has a great deal of discretion in determining what measures are necessary for the public's protection, and this Court will not, and may not, substitute its judgment for that of the Legislature insofar as the wisdom or policy of the act is concerned." Hamilton v. State, 366 So.2d 8, 10 (Fla. 1979).
The trial court found that the legislature's employment policy in originally placing physicians and attorneys in Career Service is the same as the policy now supporting reclassification of these professionals as Selected Professional Service members. The court determined that "a vested right *320 may not be taken away for the same reason it was first bestowed." The fact, however, that the legislature has enacted statutes with substantially similar goals, but has employed different means of achieving those goals, does not, in and of itself, deprive either statute of a rational basis.
The trial court also found that
permanent members of the state employed physician and attorney classes had more than a "property interest" in their jobs as of the effective date of the "exemption"... . Their rights to continued state employment had vested by statute on the effective date of Chap. 85-318, F.S... .
While the Legislature was not and is not prevented from amending a statute merely because rights have accrued thereunder, in amending a statute under which a vested right has accrued, the Legislature may not thereby interfere with rights which have vested under the original statute. State ex rel. Warren v. Miami, [153 Fla. 644, 15 So.2d 449 (1943)]. (Emphasis in original.)
The court's reliance on Warren is misplaced. That case involved a widow's pension rights established by judgment. It is undisputed that tenured employees acquire a property right in their employment. See e.g. Headley v. Baron, 228 So.2d 281 (Fla. 1969). There are, however, no vested or contractual rights in the continuation of legislatively created employment once that employment is legislatively abolished. State ex rel. McIver v. Swank, 152 Fla. 565, 12 So.2d 605 (1943).
Swank involved rights of tenured employees acquired under the civil service system of Panama City. The city commissioners were authorized to discharge economically "excessive" tenured employees without cause, but were required to rehire these employees in order of seniority when new vacancies occurred or positions were created. After several "excessive" employees were discharged, the civil service law of Panama City was repealed, abolishing all positions created thereunder. A new civil service system was then established. The "excessive" employees discharged under the old system were not rehired. We held that there are "no vested or contractual rights to office or employment, after the Legislature has acted so as to cut them off." Id. at 609 (citation omitted). See also State ex rel. Gibbs v. Couch, 139 Fla. 353, 190 So. 723 (1939); City of Jacksonville v. Smoot, 83 Fla. 575, 92 So. 617 (1922).
The reclassification of professionals into a Selected Professional Service reflects a policy decision of the legislature. There is no suggestion, nor given its scope is it likely, that this is a bad faith subterfuge to discharge or deny rights to an employee or group of employees in violation of civil service rules. Arnold v. State ex rel. Mallison, 147 Fla. 324, 2 So.2d 874 (1941). A tenured employee's right to continued employment during good behavior is contingent upon the continued existence of the employment. Any expectation that Career Service, or any particular position therein, will exist for infinity, is at most a mere hope. Implicit in the employment arrangement is the possibility that one day the legislature may consider such employment no longer consistent with the public welfare. "The inhibitions of the Constitutions of the United States upon the deprivation of property without due process, or the equal protection of the law by the states, are not violated by the legitimate exercise of legislative power in securing the health, safety, morals and general welfare." Powell v. State, 345 So.2d 724, 725 (Fla. 1977). We note that each professional in the instant case was given the opportunity to remain in the career service in any position for which he was qualified, albeit not as an attorney or physician since those positions no longer exist in Career Service.
Accordingly, we answer the certified question in the affirmative, and hold that Chapter 85-318 may be constitutionally applied to state employees who had permanent status as of October 1, 1985. We reverse those portions of the lower court's judgment which conflict with the opinions expressed herein.
It is so ordered.
*321 McDONALD, C.J., and OVERTON, EHRLICH and BARKETT, JJ., and ADKINS, J. (Ret.), concur.
NOTES
[1] Chapter 86-149, Laws of Florida, changes the name of Selected Professional Service to Selected Exempt Service and transfers several hundred Senior Management employees to the Selected Exempt Service.
[2] The parties do not challenge that portion of the trial court's order finding that collective bargaining agreements in effect October 1, 1985, shall remain in full force until expiration notwithstanding Chs. 85-219 and 85-318.
[3] Appellee initially argued that the placement of doctors into a classification separate from other medical personnel is "suspect" in that it treats allegedly similarly situated persons differently. A "suspect" class, such as those based on race, nationality, or alienage, is subject to the strict scrutiny test. In re Estate of Greenberg. But as appellee conceded at oral argument, doctors are not a "suspect" class as that term is traditionally used in discrimination actions. The use of the word "suspect" in the instant case is inappropriate and does not support application of the strict scrutiny test in this instance.