LOGUE, J.,
(dissenting).
In 2012, the Legislature enacted a law that transferred the Division of Law Enforcement of the Department of Environmental Protection to the Fish and Wildlife Conservation Commission. When it transferred the Division, did the Legislature intend to terminate the permanent career service status of the law enforcement officers in the Division and require the officers to undergo a one-year probation during which they could be fired at will as if they were new employees? This case turns on legislative intent, pure and simple.
As a case turning on legislative intent, the crucial fact is that the text of the law transferring the Division is completely silent on the issue of career status. The language of the law simply does not address this issue. Because I am unpersuaded by the Commission’s attempt to infer from the Legislature’s silence an intent to deprive the officers of such an important, constitutionally-protected right, I dissent. As the current Department Rule now recognizes, when the Legislature can easily express an intent to remove an individual’s existing property right by including clear language in the law, there is little justification for the Commission to insert such words into the law by inference.
FACTS AND PROCEDURAL BACKGROUND
Jordan M. Delong was a sworn law enforcement officer with the Florida Department of Environmental Protection with over four years of experience. As such, under the laws of our State, Delong was a permanent career service employee who could not be fired at will. He had the right not to be dismissed, suspended, or demoted unless the State proved before an independent hearing officer that he violated specific rules of employment.
In 2012, the Legislature enacted Chapter 2012-88 of the Laws of Florida, a law transferring the Division of Law Enforcement in which Delong served from the Department of Environmental Protection to the Florida Fish and Wildlife Conservation Commission. The law also provides that the officers’ leave balances transferred with them. Chapter 2012-88 does not address whether the transfer changed the status of the officers as permanent employees.
On May 2, 2013, within one year of the transfer, the Fish and Wildlife Commission dismissed Delong for alleged violations of its rules. In the dismissal notice, the Commission informed Delong that the transfer of his unit had the effect of reducing the status of the officers in the Division, including his, from permanent employees to new employees who could be *128 fired at will during a one-year probation. Under his new status as a probationary employee, the Commission reasoned, De-long had no right to a hearing to determine whether the Commission had actual cause for his dismissal.
Delong appealed to the Public Employees Relations Commission, which has jurisdiction to hear appeals filed by permanent status career service employees. § 110.227(5), Fla. Stat. (2013). The Public Employees Relations Commission dismissed Delong’s appeal, holding that because Delong was only a probationary employee, it lacked jurisdiction over his appeal. This appeal followed.
ANALYSIS
The officers’ status as permanent career service employees was a constitutionally-protected property right because they could only be disciplined or dismissed for cause. § 110.227(1); Johnson v. Beary, 665 So.2d 334, 335 (Fla. 5th DCA 1995) (“A statute which allows a demotion or dismissal only on the basis of ‘cause’ creates a constitutionally protected interest in public employment.”) (citation omitted). It was a property right the Legislature itself gave to the officers. Art. Ill, § 14, Fla. Const, (creating a civil service system for state employees); § 110.217(2), Fla. Stat. (2013) (granting permanent status to career service employees who complete a one year probationary period). The obvious public purpose of protecting the officers from arbitrary demotions and dismissals is to allow the officers to enforce the law without fear or favor.
Of course, the Legislature had the power to prospectively change the status of the officers within the career service system from permanent to probationary. See Dep’t of Corrs. v. Fla. Nurses Ass’n, 508 So.2d 317, 320 (Fla.1987) (upholding a legislative action that terminated the permanent status of certain career service employees). Thus, the Legislature clearly had the power to take away the officers’ permanent status and the rights associated with it. See State ex rel. McIver v. Swank, 152 Fla. 565, 12 So.2d 605, 609 (1943) (holding there is no protected property right in the continuation of legislatively-created employment once that employment is legislatively abolished). The issue in this case is whether the Legislature would do so, as the Commission maintains, without expressly saying it.
To answer this question we must construe Chapter 2012-88 to determine whether it reflects the Legislature’s intent to deprive the officers of this right. “A court’s purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction.” Larimore v. State, 2 So.3d 101, 106 (Fla.2008) (citing Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003)). “To discern legislative intent, a court must look first and foremost at the actual language used in the statute.” Id. (citation omitted). As the Florida Supreme Court repeatedly has explained:
when the language of the statute is clear and unambiguous and conveys a clear and definite meaningf,] the statute must be given its plain and obvious meaning. Further, we are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.
Velez v. Miami-Dade Cnty. Police Dep’t, 934 So.2d 1162, 1164-65 (Fla.2006) (internal quotations and citations omitted).
Applying these principles to Chapter 2012-88, we arrive at the first and, I believe, dispositive problem in the Commission’s argument: nowhere in the language of the law does the Legislature state any *129 express intent to remove the officers’ permanent status. Whether the officers should keep their permanent status, resort to probationary employees, or permanently lose their permanent status is simply not addressed in the text.
This silence is significant. In the past, when the Legislature removed this right from a class of civil servants, it did so expressly. In fact, it took great pains to explain the reason why it was taking a step that could have such a serious impact on the lives of a class of employees. See Fla. Nurses Ass’n, 508 So.2d at 319-20. The Legislature’s past practice clearly suggests the Legislature would not normally remove such a right indirectly and by inference only. Courts should be hesitant to assume the Legislature intended to deprive a person of a constitutionally-protected right unless the Legislature expressly says so in the text.
The Commission, however, contends the Legislature signaled its intent to remove the officers’ right to permanent employee status when it included the following language in the law:
Notwithstanding chapter 60K-5, Florida Administrative Code, or any provision of law to the contrary, employees who are transferred from the Department of Environmental Protection and the Department of Agriculture and Consumer Services to fill positions transferred to the Fish and Wildlife Conservation Commission shall retain and transfer any accrued, annual leave, sick leave, and regular and special compensatory leave balances.
Ch. 2012-88, § 5, Laws of Fla. (emphasis added). Citing to the canon of statutory construction “expressio unius est exclusio alteráis” — i.e., the mention of one thing implies the exclusion of another — the Commission argues that basic statutory construction requires the court to conclude the Legislature intentionally omitted permanent status from the list of specified benefits retained by transferred employees.
While plausible, the Commission’s argument is ultimately unpersuasive. In the first place, we should keep in mind this wise and useful maxim is misused when it is applied in a mechanical manner. As the First District recently recognized:
This maxim, meaning “the expression of one thing implies the exclusion of the other,” is “strictly an aid to statutory construction and not a rule of law.” Smalley Transp. Co. v. Moed’s Transfer Co., 373 So.2d 55, 56 (Fla. 1st DCA 1979). The correctness of the principle as applied to a particular statute “depends entirely on context,” In re Sealed Case No. 97-3112, 181 F.3d 128, 132 (D.C.Cir.1999), including the history and structure of the legislation being examined, see In the Matter of Am. Reserve Corp., 840 F.2d 487, 492 (7th Cir.1988). Its use must be governed by common sense, such that it should not be applied to defeat the “natural and obvious sense” of a statute’s provisions. The Federalist No. 83, at 495-96 (Alexander Hamilton) (Clinton Rossiter ed., 1961).
Crews v. Fla. Pub. Emp’rs Council 79, AFSCME, 113 So.3d 1063, 1071-72 (Fla. 1st DCA 2013). The maxim has been properly called “a valuable servant, but a dangerous master.” Id. (citation omitted).
Indeed, the maxim “properly applies only when the court can determine that the matters expressly mentioned are intended to be exclusive.” Id. (declining to apply the maxim when context did not indicate that matters expressly mentioned were intended to be exclusive). In the present case, there is nothing in the language, structure, or legislative history of Chapter 2012-88 indicating that the transfer of the officers’ leave was intended to be exclusive.
*130 In this regard, there is a perfectly reasonable explanation for the language used by the Legislature that has nothing to do with the Legislature’s supposed intent to make the transfer of leave balances exclusive of the officers’ career status. When a State employee transfers from one agency to another, a complex set of rules governs what happens to the employee’s leave balances. Some types of leave balances transfer; some must be paid upon transfer by the agency losing the employee; some must be paid upon transfer by the receiving agency; some are forfeited; and some are dependent upon whether the receiving agency’s pay plan accepts the leave balances as to whether they are transferred or forfeited. Fla. Admin. Code R. 60L-34.0081-34.0044 (2014). These issues not only impact the employee, but also impact the budgets of the agency losing and the agency gaining the employees.
The transfer made the resolution of these issues pressing and urgent. The language relied upon by the Commission resolved these specific personnel and budgetary issues created by the transfer. It goes beyond the normal and ordinary meaning of these words to discover in them an unspoken legislative intent to accomplish the larger and more controversial legislative goal of terminating the officers’ constitutionally-protected right to career status.
The Commission’s interpretation can be reached only by inserting words, phrases, and ideas into the text where the Legislature itself did not do so. This court is simply “not at liberty to add words to the statute that were not placed there by the Legislature.” Lawnwood Med. Ctr., Inc. v. Seeger, 990 So.2d 503, 512 (Fla.2008) (citation omitted). Rather than read language and ideas into the law that do not exist, the better approach is simply to assume the Legislature meant exactly what it said and no more.
This result is not changed by Rule 60L-33.003(2)(d) of the Florida Administrative Code, which was repealed while this appeal was pending. If anything, the fact that this Rule was replaced with the opposite rule completely undermines the Commission’s position.
At the time this matter was reviewed by the Public Employees Relations Commission, Florida’s Department of Management Services[9] had in place a rule that provided that an employee transferred by the Legislature automatically lost permanent status and reverted to probationary status unless the Legislature said otherwise. The Rule provided:
(d) Probationary or Permanent Status— An employee shall be given probationary status or permanent status in accordance with the following:
1. Upon original appointment, promotion or demotion to a different broadband level, or any time an employee moves between agencies, an employee shall be given probationary status unless a demotion is to a position in which the employee has previously held permanent status in the agency or unless the legislature has designated that an employee shall be moved but shall not have status as a new employee.
Fla. Admin. Code R. 60L-33.003(2)(d) (2013), amended by Fla. Admin.’ Code R. 60L-33.003 (2014) (emphasis added).
This Rule purports to elevate a court-created aide to statutory construction into an automatic and mechanical rule of law: it leaves no room to consider the actual language, structure, or legislative history of the law to which it will be applied. Moreover, it applies not only to laws that *131 existed at the time it was promulgated but also to future laws. In both ways, the Rule roams far afield from the proper use of an agency’s power to promulgate regulations. An agency may have special insights into interpreting specific laws, but it has no special expertise regarding court-created rules of statutory construction and no special expertise regarding laws enacted in the future. A rule interpreting the intent of the Legislature regarding future laws that have not yet been written, filed, or enacted appears to be a pure legislative act, something which an agency cannot do.
The second flaw is just as serious. The Department that promulgated this Rule has entirely abandoned it. While this appeal was pending, the Department reversed itself, executed a perfect 180-degree turn, and adopted the opposite principle as a binding rule of law. Fla. Admin Code R. 60L-33.003(5) (2014). The Department replaced this Rule with new language which provides that an employee retains his or her status in the career service system upon a legislatively-mandated transfer unless the legislation specifically states that the employee shall not retain their status. The new Rule states: “[i]n the case of a legislatively-mandated transfer, an employee retains the status held in the position prior to the time of transfer unless the legislature directs otherwise.” Id.
In terms of the power to promulgate regulations, this new version suffers the same deficiencies as the first. Nevertheless, to the extent the Division’s regulations are viewed as authoritative, this Court must be guided by the new regulation.
After all, one of the cardinal rules governing our work as an appellate court is to apply the law in existence when the appeal is decided. Nash v. Gen. Motors Corp., 734 So.2d 437, 440 (Fla. 3d DCA 1999) (recognizing that “[d]ecisional law and rules in effect at the time an appeal is decided govern the case even if there has been a change since the time of trial” (quoting Lowe v. Price, 437 So.2d 142, 144 (Fla.1983))).
Applying the current rule, we would have to hold that Delong retained his status as a career service employee as a result of the legislatively-mandated transfer because the Legislature did not specifically direct otherwise.
CONCLUSION
As the current Department Rule now recognizes, when the Legislature can easily express an intent to remove an individual’s existing property right by including clear language in the law, there is little justification for the Commission to insert such words into the law by inference. I would hold that Officer Delong did not lose his career status as a result of the transfer of his Division from one department to another, and that the Public Employees Relations Commission accordingly has jurisdiction to hear Officer Delong’s appeal of his dismissal.

. The Department is charged with promulgating uniform administrative rules regarding the status of state employees for use by state agencies. § 110.217(1), Fla. Stat. (2013).