509 So.2d 58 (1987)
CITY OF NEW ORLEANS, Trustee of the Edward Wisner Donation
v.
Louis CHERAMIE and Rickey Cheramie.
No. 86 CA 0368.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
Writ Denied September 25, 1987.
*59 Jerald P. Block, Thibodaux, for plaintiffappellant City of New Orleans, Trustee of the Edward Wisner Donation.
Russell J. Schonekas, Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, for defendants-appellees Louis Cheramie and Rickey Cheramie.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This is a suit by the City of New Orleans, Trustee of the Edward Wisner Donation (City), to evict Louis and Rickey Cheramie (Cheramies) from a 3400-acre tract in Lafourche Parish. Sometime in late 1982, the City verbally leased the land in question to the Cheramies for an annual rental of $1,800.00 payable at the rate of $150.00 per month. The parties then began negotiating for a written lease. A lease dated January 1, 1983, was drafted by a representative of the City, approved by the City Attorney, executed by the Cheramies, and approved by the City Council of New Orleans. However, the lease was never signed by the Mayor of New Orleans, as representative of the City.
The Cheramies made sporadic rental payments until July of 1984. On August 14, 1984, the City allegedly notified the Cheramies that rentals were in arrears and payment was due by August 27, 1984.[1] The City then notified the Cheramies by letter of September 4, 1984, that all agreements between the parties were terminated because no payments had been received. The Cheramies attempted to pay rentals after the September 4 letter was received, but their checks were returned by the City. The Cheramies refused to vacate the property, and on March 26, 1985, notice to vacate *60 was sent by certified mail, return receipt requested. This suit was filed on April 30, 1985.
The trial court held that the signature of the Mayor was "strictly a ministerial duty" which was unnecessary to create a binding contract and defendants thus occupied the property in question under the written lease of January 1, 1983. The trial court further held that this suit was filed prematurely because the City failed to comply with Paragraphs 10 and 16 of the lease which set forth the procedures for putting the lessees in default and for terminating the lease.
The City assigns as error the trial court's finding that a written lease existed between the parties. The City contends that under the trust only the Mayor has the authority to bind the City. The trust instrument provides: "The Mayor of the City of New Orleans, or his successor in office as Chief Executive, under whatever name said successor may be designated, is hereby appointed, authorized and empowered to act as representative or commissioner to administer the trust herein created." The City further contends that under LSA-R.S. 9:2087, this authority is nondelegable.
The Louisiana Trust Code prohibits a trustee from delegating to others the doing of acts which he can reasonably be required to perform. LSA-R.S. 9:2087. However, a trustee may delegate those duties which a person of ordinary prudence might in like circumstances in the management of his own affairs entrust others to perform. Indian Head National Bank v. Theriault, 97 N.H. 212, 84 A.2d 828, 830 (1951); G.C. Bogert & G.T. Bogert, Handbook of the Law of Trusts § 92, at 330-331 (2d ed. 1973); see also LSA-R.S. 9:2127(A). The comments following § 2087 state that this section is "similar to § 171 of the Restatement of Trusts 2d, and the laws of most states." The comments following § 171 of the Restatement note the lack of a clearcut line dividing the acts which a trustee can and cannot properly delegate. Restatement (Second) of Trusts § 171, comment b (1959). Comment g further notes that while a trustee ordinarily cannot properly appoint an agent to lease trust property, such delegation to properly selected agents is proper where the business conducted by the trust involves numerous transactions of a similar character.
Fifty thousand acres of land in three parishes were donated to the City under this trust. There were five separate leases to the Cheramies alone involving five tracts in Lafourche Parish. We find that a prudent businessman managing property such as the subject matter of this trust acting for objectives similar to those of the trust, would employ assistance in negotiating and carrying out the leasing of such property.
While the record leaves much to be desired as to the facts surrounding the delegation in this case, it is clear to this court that there was a limited delegation consistent with the trust by the Mayor to the New Orleans City Attorney.[2] Richard Peneguy, the Secretary-Treasurer of the Edward Wisner Donation Advisory Committee (Committee), testified the City Attorney's approval of the lease was required. On March 3, 1983, Peneguy wrote to David Levy, the Cheramies' attorney, advising him that the lease had been approved by the City Attorney. The letter then stated: "Therefore, we hereby confirm that the trade agreed to on February 10, 1983 between Louis, yourself and the Committee has been consummated, as of January 1, 1983." Peneguy testified he thought the lease was valid at that point.
The City contends, however, that the lease was not binding until signatures were affixed by both parties, and either party could refuse to abide by its terms until the written lease was signed. However, there is considerable authority to the contrary. Lease is defined in Civil Code article 2669 as "a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." The essential elements of a contract of lease are the thing, the price, *61 and the consent. LSA-C.C. art. 2670. There is no requirement that a lease be in writing. LSA-C.C. art. 2683. If a verbal lease includes all essential details and the parties act upon it, neither may withdraw on the pretext that it was not reduced to writing although a written contract was contemplated. Bruhl v. White, 346 So.2d 734 (La.App. 1st Cir.), writ denied, 349 So.2d 1268 (La.1977); Add Chemical Co. v. Gulf-Marine Fabricators, 345 So.2d 216 (La.App. 3d Cir.), writ denied, 347 So.2d 263 (La.1977). Furthermore, where a lessor drafts a lease and presents it to the lessee for signing, the lease is valid and binding upon the lessee's acceptance even if the lessor subsequently fails or refuses to sign the lease. Auto-Lec Stores v. Ouachita Valley Camp No. 10, W.O.W., 185 La. 876,171 So. 62 (1936); Dyer v. Varnell, 121 So.2d 598 (La.App. 2d Cir.1960); cf., Atlantic Banana Co. v. Standard Fruit & Steamship Co., 493 F.2d 555, 559 (5th Cir. 1974).
There were continued negotiations between the Committee, the Cheramies, and the City Attorney relative to a $50,000.00 loan from the trust to the Cheramies for improvements to the leased property and for a new lease which included the right to conduct shrimp farming operations on the property. However, the loan was a contract separate from the lease, and there was agreement between the City and the Cheramies as to the terms of the lease dated January 1. Thus, we find the trial court correctly held that the written lease of January 1, 1983, was valid and binding upon the parties.
The City's second and final assignment of error is that the trial court erred in determining that the City failed to adequately notify the lessees of the breach of the lease prior to institution of eviction proceedings. The pertinent lease provisions are as follows:
(10). In the event that (i) default be made by Lessee at any time in the due payment of any rental hereunder, and such default shall continue for a period of thirty (30) days after Notice of such default is given by Lessor to Lessee, ... Lessor shall, on Notice to Lessee, have the right (a) to cancel this lease effective immediately or as of any date which Lessor may select....
(16). Any Notice required by this lease shall be sent by certified United States mail, postage prepaid, to the address listed below....
The trial court found the City's letter of September 4, 1984, insufficient to comply with the putting in default provisions of Paragraph 10 because there was no proof in the record that the letter was sent by certified mail, and further because it referred to "the several agreements we had with you" rather than the particular agreement on the 3400-acre tract involved in these proceedings.
The notation "CERTIFIED MAIL, R.R. R." is typed in the upper right-hand corner of the September 4 letter. Although the green return receipt card from the Post Office was not introduced into evidence, there is no dispute that the letter was mailed and was received by the Cheramies. Evidence of witnesses which stands uncontradicted must be accepted by the court as true. Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Moreover, the purpose of the requirement that notice be given by certified mail is to ensure receipt. There is no deficiency in notice here; Louis Cheramie testified that the letter was received. There is likewise no dispute that the agreement on the 3400-acre tract was included within the "several agreements" referred to in the letter.
Although the trial court's reasons for finding inadequate notice are clearly wrong, the result reached by the trial court is not. Under the lease, the lessees are given 30 days after notice to cure their default. Notice of default was given on September 4. Louis Cheramie testified that after he received the September 4 letter, he left a check with his attorney to pay the September rental. That check was lost by the City and was never negotiated. He also tendered a check to the City on September 25 for the October rental, which the City returned to him. The Cheramies made a good faith effort to cure their default *62 within 30 days after being given notice of default. Thus, the City failed to comply with the provisions of Paragraph 10 of the lease before instituting eviction proceedings.
Therefore, for the above reasons, the judgment of the trial court in favor of Louis Cheramie and Rickey Cheramie and against the City of New Orleans, Trustee of the Edward Wisner Donation, is affirmed. Costs, amounting to $1,804.70, are taxed to the City.
AFFIRMED.
NOTES
[1] A copy of the August 14 letter was not introduced into evidence. Furthermore, defendants denied that they were in default on that date. Louis Cheramie testified that he sent a check for the July and August rent to the City on August 1 which was deposited by the City on August 13. However, a copy of that check was not produced at trial.
[2] The City Attorney is an appointee of the May or. LSA-R.S. 33:386(C).