WICKER, Judge.
This appeal arises from a suit for damages to leased premises, loss of rent, and attorney’s fees filed on behalf of the plaintiff/appellant, Jennie R. Martinez, against defendants/appellees, Eleanor Sue Zelenko and Eli Stewart. The trial judge rendered judgment in favor of Martinez and against Zelenko in the amount of $4,502.00, costs and legal interest. He also dismissed Martinez’ claims against Stewart. Martinez is the only party to appeal the judgment. She seeks judgment against Stewart and an increase in the award. We affirm.
Martinez originally entered into a written lease with Stewart for a term of three years, beginning February 1, 1988 through January 31, 1991 at $400.00 per month. This was a lease of a building located at 1116 Stumpf Boulevard in Gretna, Louisiana. The lease was signed by Martinez and Stewart on January 15, 1988. It provided for the use of the premises to be “offices for credit consulting services only and for any other legitimate use.” The lease also provided that “Tenant shall not have the right to sublease.”
Stewart testified that although the lease was in his name he never occupied the premises. Instead, his roommate, Jackie Carlson, operated Specialty Finance Company at that location. He admitted he never received written approval from Martinez to sublease the property. However, Martinez received rent from Carlson for approximately two years. Martinez stated that she received payment from others but explained this was for Stewart’s rent. Nevertheless, she also testified that “the original tenant had Specialty Finance Company” when questioned about what sign had been on a pole on the premises.
Stewart also testified that there was a six-month period when the building was empty. During this time he paid rent himself. Meanwhile he began converting the premises into a barroom. Zelenko testified she had heard from a friend, Andy Balbach, that Stewart was finishing a lounge. She became interested and contacted Stewart who told her she needed to contact Martinez. She stated on May 19, 1990 she contacted Martinez. On May 20, 1990 she stated she met with Martinez, Balbach, Carlson and possibly Carlson’s son at the location. She noted the premises had been converted to a barroom. She testified that at that meeting she and Martinez negotiated a lease of the premises wherein a rental fee of $400.00 per month was agreed beginning June 1, 1990. She *526 stated there was a verbal agreement evidenced by strike overs in the original Stew-arL-Martinez written lease. Martinez denied ever discussing a lease with Zelenko. Zelen-ko stated Martinez gave her a key on May 20, 1990.
Ira Hopkins testified that he was contacted by Martinez to expedite Zelenko’s application for a liquor permit. He was aware that Zelenko did occupy the lounge and apply for a license. Martinez denied even telling Hopkins to expedite the license.
Zelenko gave Martinez two checks for $400.00 which Martinez negotiated. The first cheek was dated May 19,1990. Zelenko explained that Stewart was late with that month’s rent and she, Zelenko, did not want him to lose his right to occupy the premises. The second check was dated June 2, 1990. While the May cheek carries the notation it is payment for Stewart, the second Zelenko check does not. Zelenko testified that Martinez sent her the written lease agreed to but that when Zelenko signed it Martinez did not accept it. Instead, Zelenko stated Martinez asked for $800.00 rather than $400.00 and added additional restrictions. Zelenko stated when she refused to agree to different conditions Martinez began eviction proceedings. The eviction proceedings were in evidence. These were brought against Zelenko only and not Stewart. The notice of eviction was June 19, 1990. However, an appeal was taken and the actual eviction date was October 1, 1990. During the period from June 1, 1990 to October 1, 1990 Zelenko operated a barroom at the premises. Zelenko’s attempt to pay the July rent of $400.00 was refused by Martinez.
On July 7, 1990 all four of Martinez’ units, including Zelenko’s lounge, flooded. The record clearly establishes the cause of the flooding was due to a rear tenant: Rueben’s Used Appliances. Martinez received payment from that tenant’s insurer, State Farm, for water damage. She was compensated for the loss of carpet, floor tile and baseboards in the unit occupied by Zelenko as well as for loss in the other units.
On appeal Martinez specifies the following errors:
1. The trial judge erred in concluding the lease between Martinez and Stewart terminated May 19, 1990, and
2. The trial court erred in allowing a credit of $5,080.45 since that amount reflects damages caused by Rueben’s Used Appliance which were paid in settlement to Martinez July, 1990.

TERMINATION OF LEASE WITH STEWART:

The trial judge evidently gave greater weight to Stewart’s testimony that Martinez directly accepted rent from Carlson for approximately two years. He thus concluded that despite the provision in the lease agreement that the property could not be subleased Martinez was aware of a different occupant at the location for approximately a two-year period and accepted rent from a person who was not a party to the lease and one who operated a finance company rather than a consulting company as previously contained in the lease provisions. She stated at trial that “original tenant had Specialty Finance Company” and was aware of the sign placed there by that company. Stewart admitted subleasing immediately to Carlson who operated this finance company at that location for approximately two years.
Applying the standard of review in Rosell v. ESCO, 549 So.2d 840 (La.1989) we find no manifest error in the trial judge’s concluding there was no breach of the lease when Stewart subleased to Carlson.
Additionally, in Blanchard v. Shrimp Boats of Louisiana, Inc., 305 So.2d 748 (La. App. 4th Cir.1974) the court held at 749:
It is clear that the right of the lessor to reject any sub-leases by his lessee can be waived. This waiver can be written, oral or implied from actions by the lessor, [citations omitted].
This factual finding is important because it shows an intent on the part of Martinez to agree to oral modification of the original Stewart-Martinez lease.
The trial judge also attached greater weight to Zelenko’s testimony that Martinez agreed to lease the premises to her for the operation of a barroom. Zelenko’s testimony *527 that a meeting had taken place was corroborated by Balbach’s testimony. He stated he was present during the negotiations and witnessed Zelenko and Martinez scratching Stewart’s name off the written lease and substituting Zelenko’s name. He stated this lease was for $400.00 per month. He also stated that later Martinez sought to double the rent. That lease with the strike overs was introduced into evidence.
Also introduced into evidence was a written lease for $400.00 per month which Zelen-ko stated Martinez sent to her for signing. Zelenko signed this lease but Zelenko stated Martinez refused to accept it.
Further corroboration for the existence of a lease between Zelenko and Martinez came from Hopkins’ testimony. He stated Martinez contacted him to expedite Zelenko’s receiving a liquor permit.
There is ample evidence sufficient to justify the trial judge’s conclusion that on May 20, 1990 Martinez and Zelenko verbally agreed to the elements for a contract of lease, i.e., the thing, price, and consent. La. Civ.Code art. 2669. A lease need not be written. La.Civ.Code art. 2683. Furthermore,
If a lease includes all essential details and the parties act upon it, neither may withdraw on the pretext that it was not reduced to writing although a written contract was contemplated, [citations omitted]. Furthermore, where a lessor drafts a lease and presents it to the lessee for signing, the lease is valid and binding upon the lessee’s acceptance even if the lessor subsequently fails or refuses to sign the lease, [citations omitted].
City of New Orleans v. Cheramie, 509 So.2d 58, 61 (La.App. 1st Cir.1987), writ denied, 512 So.2d 463 (La.1987).
The trial judge also evidently concluded Stewart and Martinez had mutually agreed to rescind the original lease. Accord Mayeaux v. Christakis, 619 So.2d 93 (LaApp. 5th Cir.1993).
We find no manifest error in the trial judge’s factual conclusions. Rosell, supra.

DISALLOWANCE OF DAMAGES TO FLOOR TILE, CARPET AND BASEBOARDS:

Appellant argues the trial judge erred in disallowing $5,080.45, the amount of damages State Farm attributed as water damage caused by Rueben’s Used Appliances. The trial judge reasoned these were items of damage caused by a rear tenant. He allowed no recovery for carpet, floor tile or baseboard damage. The record clearly establishes the carpet, floor tile and baseboards in the lounge suffered such damage that Martinez filed a claim with the tortfeasor tenant’s insurer, State Farm, for the loss of these items. To allow Martinez to recover these damages would allow her to collect twice for the same loss. Furthermore, Martinez admitted she never replaced these items during Zelenko’s occupancy.
We find no manifest error in the trial judge’s factual conclusion regarding causation. Rosell, supra.
Accordingly, for the reasons stated, the judgment in favor of the plaintiff, Jennie R. Martinez, and against the defendant, Eleanor Sue Zelenko, in the amount of $4,502.00, interest and costs is affirmed. The judgment in favor of defendant, Eli Stewart, and against plaintiff, Jennie R. Martinez, dismissing Martinez’ claims against Stewart is also affirmed. Costs of this appeal are to be borne by the appellant, Jennie R. Martinez.

AFFIRMED.