I,LANDRIEU, Judge.
The City of New Orleans (City) filed a third party demand against the Orleans Parish School Board (School Board), seeking indemnity for damages sustained by plaintiff, Wilberina Russell, in an accident at the Municipal Auditorium. From the trial court judgment rendered in favor of the City, the School Board appealed. We reverse the trial court’s judgment.
As was the customary practice, each year the School Board entered into several lease agreements with the City to lease the Municipal Auditorium and the Theatre of Performing Arts for various high school graduation ceremonies. The standard lease agreement contained an indemnity provision whereby the School Board' agreed to indemnify, defend and hold harmless the City from all claims resulting from injury or death or property loss by the School Board, the City or any third party on the leased premises during the existence of the lease. It also contained a provision requiring the School Board to provide a public liability insurance policy in which both the City and School Board were named insureds. Each year, instead of providing the liability insurance policy, the School Board would send a letter to the City stating that it was self-insured.
In this particular case, the School Board and the City agreed that the School Board would lease the Municipal Auditorium for the Cohen High School 1 ¡¡.graduation ceremony scheduled for May 30, 1988. The City sent the standard written lease to the School Board for the appropriate signatures, but due to an oversight by Superin *68 tendent Everrett Williams’ newly hired administrative assistant, the lease was never signed and returned to the City. The School Board also failed to provide the City with its letter of self-insurance. Nevertheless, the School Board paid the necessary fees, secured the date and the ceremony took place as scheduled.
The evening of the ceremony, Ms. Russell was descending the balcony stairs when the heel of her left shoe became lodged in a two-inch crack in a step. As a result, she fell and sustained severe leg injuries. On May 19, 1989, Ms. Russell filed suit against the City. More than four years later, on June 25,1993, the City filed a third party demand against the School Board for indemnity under the lease agreement.
The parties stipulated that plaintiff fell and sustained injuries. The City admitted at trial that the two-inch crack in the step on which plaintiff fell was the result of ruin. While both parties stipulated to the total amount of plaintiffs damages, neither party stipulated to liability. Following a trial, the trial judge rendered judgment in favor of the City, ordering the School Board to indemnify the City for the total amount to be paid to plaintiff. The judgment also reserved the City’s right of reimbursement for expenses it incurred in defending the personal injury suit.
In its first assignment of error, the School Board argues the City failed to prove the two-inch crack in the step constituted an unreasonable risk of harm.
In his reasons for judgment, the trial judge failed to specifically address whether the crack posed an unreasonable risk of harm. Nonetheless, he concluded |3the School Board had to indemnify the City for plaintiffs damages. In view of the parties’ stipulations, we can only conclude the trial judge found the two-inch crack in the step posed an unreasonable risk of harm. We cannot say this finding is clearly wrong.
Next, the School Board argues the trial court erred in finding the City was entitled to indemnification under the lease agreement.
As a defense to the City’s third party demand, the School Board argued that the indemnity provision was invalid because the lease was never signed and returned to the City. The City, however, offered the testimony of several School Board employees, including Superintendent Williams, to explain the School Board’s failure to sign and return the lease for the 1988 Cohen High School graduation ceremony. These witnesses also testified as to the City and School Board’s annual practice of entering into the lease agreements for the various high school commencement exercises. With the exception of the 1988 Cohen High School lease, the City introduced into evidence the signed standard lease agreements for several other 1987, 1988 and 1989 high school graduation ceremonies, in addition to the School Board’s receipts indicating it had paid the requisite fees. Based on this evidence, the trial judge concluded, “[t]he dates were reserved, the lease was sent and received by the Orleans Parish School Board, the dates were used, and the money was sent the same as agreed. This court feels all parties agreed.”
Leases may be made by either written or verbal contract. La. Civ.Code. Art. 2683. To be valid, a contract of lease must have three essential elements, the thing, the price and the consent. La. Civ. Code 2670. When negotiating parties agree that a final lease agreement will be reduced to writing, then that agreement is |4an integral part of the contract itself, and until the agreement is reduced to writing there is no contract and either party may retract or refuse to abide by what had been orally agreed upon. See Martin v. Schluntz, 589 So.2d 1208 (La.App. 4 Cir. 1991). However, if a verbal lease includes all essential elements and the parties act upon it, neither may withdraw on the pretext that the lease was not reduced to writing. See City of New Orleans v. Cher- *69 amie, 509 So.2d 58 (La.App. 1 Cir.1987), writ denied, 512 So.2d 463.
After reviewing the evidence in the instant case, we cannot say the unsigned written lease agreement constituted a valid written lease contract in which all provisions therein were binding on the parties. The evidence, however, is sufficient to prove the existence of an oral lease between the City and School Board. To the extent there was a valid oral contract, we find the parties were bound with regard to the general terms of a lease only, i.e., the object of the lease, the lease price, the date(s) and duration of the lease. This would not include an onerous provision such as an indemnity clause.
Nonetheless, for the purposes of argument only, we will address the issue of whether the indemnity provision in the standard lease required the School Board to indemnify the City for claims arising out of strict liability under La. Civ.Code art. 2317.
The Louisiana Supreme Court decided that a contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is to be strictly construed, and that such a contract will not be construed to indemnify an in-demnitee against losses resulting to him through his own negligent acts, unless such an intention is expressed in unequivocal terms. Polozola v. Garlock, 343 So.2d 1000 (La.1977).
In Soverign Insurance Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986), the Court considered whether a similar rule of contractual interpretation should be applied to determine if a contract provides indemnity against an indemnitee’s strict liability under La. Civ.Code article 2317 for damage to a third person caused by an unreasonably dangerous thing in the in-demnitee’s custody. The Court stated:
When a contract of indemnity makes no express provisions for indemnification against the consequences of the indem-nitee’s negligence, and an unequivocal intention to so indemnify cannot be found after interpreting each contractual provision in light of the whole contract and the general rules of contractual interpretation, the court will presume that the parties did not intend to hold the indemnitee harmless from such liability. On the other hand, this presumption does not apply to the question of whether the parties intended to indemnify against the indemnitee’s strict liability under Civil Code 2317. If the contract’s provisions are doubtful or simply fail to address the question, the court may further interpret the contract on this point in light of everything that, by law, custom, usages or equity is considered as incidental or necessary to its effectuation.
Id. at 983.
In Soverign, Texas Pipeline Company leased a tract of land to operate a crude oil storage facility. Texas entered into a contract with Atlas Construction Company for the construction of three crude oil storage tank foundations. The contract provided that Atlas would indemnify Texas against any liability, cost, expense, damage or loss in connection with the contract, except that resulting solely from Texas’ negligence. Nine months after the commencement of the contract, a roadbed on the leased premises collapsed, causing a cement truck owned by a subcontractor to overturn. The truck was a total loss except for its lfisalvage value. Soverign, the subcontractor’s insurer, paid the loss then sued Texas as custodian of the roadway, claiming strict liability under La. Civ.Code art. 2317.
The contract provided that Atlas would indemnify Texas “whether or not [Texas] may have jointly caused or contributed to, by it own negligence any such claim, demand, caused of action, liability ....” Interpreting this indemnity provision in light of the other provisions and the contract as a whole, the Court found that the parties contemplated strict liability arising under La. Civ.Code art. 2317 when they agreed *70 that indemnity should cover each and every claim, demand, cause of action and liability, except those resulting solely from Texas’ negligence. The Court considered the other contractual provisions wherein Atlas represented that it had inspected the premises for hazardous conditions and had determined their nature and extent to its satisfaction; and Atlas promised to take any measures necessary to adequately protect all persons and property from injury or loss arising out of the work and to maintain all passageways for the protection of persons and property required by any local conditions.
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. See Polozola v. Garlock, supra. Interpretation of a contract is the determination of the common intent of the parties. La. Civ.Code art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. Civ.Code. art.2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract, as a whole. La. Civ.Code art.2050. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. Civ.Code art. 2051. The ^obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect. La. Civ.Code art. 2054. Equity is based on principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expenses of another. La. Civ.Code art.2055. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. Civ.Code art.2056.
Applying the aforementioned interpretive rules to the contract in the present case, we cannot conclude that that the parties intended to provide for indemnity against the City’s strict liability to a third person under La. Civ.Code art. 2317. The indemnity provision in the lease agreement between the City and School Board provided:
Lessee agrees to indemnify and provide insurance coverage, defend and hold harmless the lessor from all demands, claims, suits, actions or liabilities resulting from injuries or death to any persons or property damage or loss by lessee, lessor or any persons, howsoever caused prior to, during and after the period in which this agreement covers for use of the leased space and its immediate street, sidewalk, and exterior of the leased building or occurring as a result of the use of such space during the aforesaid period.
Lessee agrees to provide with this executed lease a public liability insurance policy in which both lessor and lessee are named as insured, of an acceptable certificate of insurance, with minimum policy limits of $500,000 for injuries, including death, sustained by one or more persons and $25,000 for property damage; the term of such coverage to coincide with the dates; time and purpose of this agreement.
|sThe words of the contract are not clear and explicit regarding strict liability, so further interpretation may be made in search of the common intent. Although the contract provided that the School Board indemnify and hold harmless the City from all demands, claims, suits, actions or liabilities, and required it to provide a public liability policy naming the City as an additional insured, such general terms must be interpreted to cover only those things it appears the parties intended to include. When this provision is interpreted in light of the other provisions and the contract as a whole, it is not evident that the parties intended to afford *71 the City indemnity against claims, causes of action and strict liability arising under La. Civ.Code art. 2317.
Specifically, the lease provided that the Municipal Auditorium facility, including the demised premises and the keys to the building, was to remain at all times under the charge and control of the manager appointed by the City. It allowed the manager to enter the building and any part of the demised premises at any time and on any occasion. In addition, the City retained the right to use and/or license the use of other portions of the facility that were not covered under .the lease. Unlike the contract in Soverign, the lease term in the present case was for a matter of hours, rather than months or years and the School Board had no opportunity to inspect the premises for hazardous conditions. Furthermore, the contractual provisions prohibited the School Board from making alterations of any kind to the leased premises.
The lease was prepared by the City and sent to the School Board for signatures. There is no evidence in the record that the School Board was in a position to negotiate any terms of the lease. In view of this, the contract to lease the Municipal Auditorium for a high school graduation ceremony cannot | ^reasonably be construed to conclude that the School Board intended to indemnify the City for liability for latent defects in the premises which were in existence prior to commencement of the ceremony and were neither caused nor aggravated by the School Board’s activity at the site. Moreover, the School Board was in no better position at the time of the execution of the contract to evaluate, predict or control the risks arising from latent defects on the premises, for which the City was responsible as custodian, than it was to evaluate, predict or control the risks arising from the City’s negligence. Allowing indemnification to the City under these circumstances discourages action on the part of the City to discover and remedy hazards on the premises under its control.
For the above reasons, we find the trial judge erred in concluding the indemnity provision in the unsigned contract required the School Board to indemnify the City for claims arising in strict liability under La. Civ.Code art. 2317.
Accordingly, the judgment of the trial court is reversed.

REVERSED.