685 So.2d 436 (1996)
Ruby BALDWIN, Plaintiff-Appellee,
v.
John L. BASS, d/b/a John L. Bass Construction Company, Defendant-Appellant.
No. 28984-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
Writ Denied March 7, 1997.
Dennis G. Stewart, Rayville, for Defendant-Appellant.
Robert G. Foley, Monroe, for PlaintiffAppellee.
*437 Before MARVIN, HIGHTOWER and BROWN, JJ.
MARVIN, Chief Judge.
In this action for the return of $15,000 paid as what the litigants styled sometimes either as a "down [payment]" or "deposit" to a building contractor by Plaintiff Baldwin, the contractor, Bass, appeals a judgment awarding Mrs. Baldwin $14,000 which effectively allowed Bass $1,000 on his reconventional demand for his paying for a change in the house plans and for preliminary work done on the residential lot after the $15,000 was paid him.
Bass contends Mrs. Baldwin accepted his handwritten contract proposals by paying him the $15,000, urging that the trial court erred in finding that the litigants did not reach an enforceable contract which would have allowed him damages for loss of profits because of her termination of the alleged contract. These issues are essentially factual.
Finding that the record supports the trial court's judgment, we affirm.

FACTS
Mrs. Baldwin, a resident of California, planned to relocate to Louisiana and build a house on family-owned property in Lake Providence. After purchasing floor plans advertised in a magazine, she contacted Bass, a building contractor, through her brother in Lake Providence, Alex Artley.
In early 1994, Baldwin arranged to meet Bass in Lake Providence at her brother's home where they verbally discussed the matter. Discussing changes in the floor plan and the estimated price per square foot, Bass stated that the home would cost $130,000 to build, explaining that he would require a $15,000 "deposit." No other details were agreed to and no written agreement was executed at this initial meeting.
Bass took Mrs. Baldwin's floor plans to a drafter to change the plans, as desired by Mrs. Baldwin, and to design and specify the foundation that would be necessary for the construction. Bass paid the drafter $600 for his work which Bass discussed by telephone and correspondence to Mrs. Baldwin in California. After the plans were redrawn, Bass mailed to Mrs. Baldwin the plans and his handwritten contract documents detailing the $134,900 cost of the home and [partially in typewritten format] what amounts Mrs. Baldwin was obligated to pay at what times during the course of construction. Mrs. Baldwin did not sign these papers but took them to her bank, borrowing the $15,000 deposit Bass verbally demanded and mailing Bass a bank check for that amount on the next day, April 26, 1994.
Mrs. Baldwin left the initial unsigned papers at her bank. After Bass was paid the $15,000, and in accord with their further conversations, he mailed to Mrs. Baldwin in May 1994 another copy of the contract papers, apparently identical to the first documents sent her, entitled "BID PROPOSAL AND CONTRACT AGREEMENT." After receiving these documents that month, she had further conversations with him, but did not sign and return the documents to him as he had requested. The contract documents received by Mrs. Baldwin in May 1994 were signed and initialed by Bass. These documents and Bass's correspondence to her are appended to this opinion.
Bass testified that because of the size and cost of the house, he had informed Mrs. Baldwin that he needed a signed contract before starting construction. Bass explained that after receiving the $15,000, he and one of his employees, Shawn Cook, took building stakes and sawhorses to the construction site, cut weeds on the property, and worked the site with a disk harrow. Cook corroborated some of Bass's testimony in this regard. Mrs. Baldwin's brother, Artley, who lived next to the construction site, testified he observed very little work done by Bass on the site and saw only some sawhorses on the site.
Mrs. Baldwin testified that she purposely did not sign the second copy of the contract documents after receiving them in May, because she had learned from her brother that Bass was rumored to be going bankrupt and because she and her husband were having marital problems and were contemplating a separation. She testified that she decided *438 not to follow through with construction of the house, explaining her separation and resulting financial straits to Bass and requesting him to return her $15,000 deposit. In her conversations with him, Mrs. Baldwin did not mention the bankruptcy rumor to Bass.
Mrs. Baldwin testified that Bass answered her request for the return of the $15,000 by asking to be allowed to do so by paying her in installments. Bass acknowledged he told Mrs. Baldwin he would return the deposit, explaining that he had spent the $15,000 paying other bills associated with his business.[1]
To Mrs. Baldwin's action for the $15,000, Bass answered and filed a reconventional demand alleging breach of contract and damages. The trial court concluded that Bass and Mrs. Baldwin had not reached a contract because the evidence regarding their initial meeting showed that each contemplated that a written and detailed contract would be prepared and signed by each of them. Bass prepared the documents after their initial meeting.

DISCUSSION
Generally, a contract may be formed by consent, the offer and acceptance of which needs no particular form except that which either the parties may contemplate or which the law may prescribe in specific circumstances. La.C.C. arts. 1927, 1947; Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La.C.C. art. 1906. See also La.C.C. arts. 1918, 1927, 1966, 1971; Keller v. Sisters of Charity of Incarnate Word, 597 So.2d 1113 (La.App. 2d Cir. 1992).
When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form. La.C.C. art. 1947 and Baker v. Maclay Properties Co., cited supra.
The trial court's conclusion that there was no contract between Bass and Mrs. Baldwin because they contemplated a signed contract is a finding of fact which may not be disturbed on appeal unless it is found clearly wrong. See Belgard v. Collins, 628 So.2d 1254 (La.App. 3d Cir.1993); Harris v. Wallette, 538 So.2d 728 (La.App. 2d Cir. 1989). Bass and Mrs. Baldwin each effectively testified they anticipated a written and signed contract before either would be bound and before Bass would begin the construction. The appended correspondence supports this conclusion.
The litigants agreed in their initial meeting in 1994 only that they anticipated entering into a contract for Bass to build for Mrs. Baldwin, according to house plans that would be changed, a house for an estimated, but not yet specific, price. At that meeting, they had no true contract or agreement other than to have the house plans drawn, price and payment and construction details specified in a writing that might be signed or executed if agreeable to each other. Each anticipated that Bass would submit the change in plans and written contract details to Mrs. Baldwin. Bass's initial estimate of $130,000 on a square footage basis as the cost of construction was changed to $134,900 in his written bid proposal and offer to contract. Exhibit 3 of the contract documents (appended) specifically set forth what amounts were to be paid by Mrs. Baldwin at what times to Bass as the construction progressed. The proposal contains details about specifications. These matters were not discussed and verbally agreed to in detail at their initial meeting.
Importantly, Bass testified that the receipt of the $15,000 did not mean anything to him without the accompanying contract signed by Mrs. Baldwin. Exhibit 5a (appended) is his "receipt" of the $15,000 for "getting her foundation work started." By his own admission Bass waited for Mrs. Baldwin to sign and return to him the written bid proposal and contract he submitted to her before he began any significant or major site or foundation work for the construction of the home. See also Exhibit 5b appended.
*439 The evidence about these contacts between him and Mrs. Baldwin, his sending another copy of the written contract documents after the $15,000 check was mailed to him, negate his suggestion that the $15,000 paid to him was her "acceptance" of his written contract proposals she took to her bank. Likewise, his preliminary site work, mowing, staking and disking, is relatively insignificant under the circumstances and is not an acceptance by performance of the second copy of the written contract proposals prepared and signed by him, but not by Mrs. Baldwin. Acceptance by performance requires an invitation to accept in such a manner and contemplation that performance, once commenced, will be completed. La.C.C. art. 1939.
The written "Bid Proposal and Contract Agreement" mailed twice by Bass to Mrs. Baldwin was nothing more than a specific offer made by him to her for her signed acceptance and return. His signature or initials show his invitation to her to accept his offer in writing. Having heard Mrs. Baldwin explain to him that she had not signed the first documents as he had requested, he could not consider his receipt of the $15,000 "deposit" at the time as her "acceptance" of his written contract proposal, which she told him she had left at the bank. Neither should her request that he send another copy to her be construed under these circumstances as indicating her willingness to be bound by his proposal. Her request instead supports the conclusion that the initial intent of each party was to be bound only by a written and signed contract. Again see the appended proposal and correspondence. We have no other "agreement" under the circumstances of this record.
Neither Schulingkamp v. Aicklen, 534 So.2d 1327 (La.App. 4th Cir.1988) nor Hurley v. Fox, 520 So.2d 467 (La.App. 4th Cir.1988) supports the position that an offer may be accepted tacitly, as Bass argues. Schulingkamp did not find the circumstances of that case sufficient for tacit acceptance. We note, as did the court in Schulingkamp, that possession of contract documents standing alone does not qualify as acceptance of the offer contained within that writing.
Hurley simply stands for the principle that in some circumstances a written offer may be accepted other than by a signature. An acceptance need not mirror the form of the offer unless the parties contemplate a certain form or the offer states that the acceptance must be in that form. La. C.C. arts. 1927, 1947. The circumstances of each case must control. See North Louisiana Milk Producers Ass'n, Inc. v. Southland Corp., 352 So.2d 293 (La.App. 2d Cir.1977).
The Hurley court did not reach the factual question of whether an acceptance had been made. The Hurley court remanded that case to allow the trial court to determine whether such circumstances existed.
The Hurley court did not reach any conclusion about what the parties intended as to the form of the offer and the acceptance. If parties intend a contract to be written and signed, the presumption is that the contract is unenforceable unless signed. See authorities discussed, supra. The party who seeks to enforce a written contract, where signatures were the contemplated form, has the burden of proving that the other party who has not signed agreed to be bound by the terms of that written contract.
This record supports the conclusion that each party contemplated being bound only by a signed written contract.
We also conclude that the trial court did not abuse its discretion by allowing Bass the $1,000 credit for the costs he expended in having the floor plans redrawn and for the preliminary site work, mowing, disking, staking and placing construction items such as sawhorses on the site. That "award" is just and adequate under the circumstances and we shall not increase it or award any loss of claimed "profit."

DECREE
At the cost of appellant, the judgment is AFFIRMED.
*440 APPENDIX

*441 
*442 
*443 
*444 
*445 
*446 
NOTES
[1] Bass's use of the deposit in such a manner may violate La.R.S. 14:202.