882 So.2d 652 (2004)
ENTERPRISE PROPERTY GROCERY, INC., Plaintiff-Appellee
v.
SELMA, INC., Defendant-Appellant.
No. 38,747-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
*653 Billy R. Pesnell, Shreveport, for Appellant.
F. Michael Carmody, Shreveport, for Appellee.
Before WILLIAMS, PEATROSS and LOLLEY, JJ.
WILLIAMS, Judge.
The defendant, Selma, Inc. ("Selma"), appeals a judgment of eviction in favor of the plaintiff, Enterprise Property Grocery, Inc. ("Enterprise"). The trial court ordered defendant to vacate the premises and denied its motion to reopen the case. For the following reasons, we reverse and render.

FACTS
By written lease dated February 28, 1997, Enterprise leased to Selma the premises located at 7727 Linwood Ave., Shreveport, Louisiana, for a term of five years ending on March 1, 2002. The lease provided that the monthly rental amount would be $1,400 and that Selma would have the option to twice renew the lease for an additional term of five years upon written notice. Selma operated a Jiffy Pak convenience store on the leased premises.
Selma failed to exercise its option to renew the lease, which expired on March 1, 2002. After the lease termination was discovered in June 2002, Dr. Neil Halim, vice president of Selma, contacted Wajeh Shihadeh, the owner of Enterprise, to request a new lease. Shortly thereafter, Shihadeh traveled out of the country and Selma continued to occupy the leased premises at the rent of $1,400 per month.
After Shihadeh's return to Shreveport in August 2002, Lutfi Abdulhalim, president of Selma, contacted him a number of times seeking a new lease. In response, Shihadeh prepared a document titled "Commercial Lease." The proposed lease was for a term of five years without an option to renew and required a rental payment of $2,000 per month. The record shows the following chronology:
 September 2002-Abdulhalim picked up the draft of the lease, objected that the *654 new lease was unacceptable because of the increased rent and lack of a renewal option.
 October 22, 2002-Shihadeh mailed a certified letter stating that Selma was occupying the property on a month-to-month basis and Shihadeh was terminating Selma's right to occupy the premises for non-payment of rent.
 October 24, 2002-certified letter received by Abdulhalim (lease signed between 10/24/02 and 11/1/02).
 November 1, 2002-Halim met with Shihadeh and paid the October 2002 rent.
 November 22, 2002-Selma paid rent for November 2002.
 July 22, 2003-Enterprise mailed written demand that Selma vacate premises.
 August 4, 2003-Selma mailed written response to Enterprise stating that Selma was occupying premises under a valid lease.
 August 15, 2003-Enterprise mailed written notice terminating Selma's right of occupancy.
 August 29, 2003-Selma mailed written response to Enterprise refusing to vacate premises before expiration of the five-year lease term.
 September 4, 2003-Notice to vacate premises mailed to Selma.
Abdulhalim signed the new lease, which was not dated, and his signature was not witnessed or notarized. The parties gave conflicting testimony regarding what took place at the November 1, 2002 meeting at Shihadeh's business office. According to Halim, he delivered to Shihadeh the partially executed lease, along with a personal check of $2,000 for the October rent and another check of $1,000 for an installment payment for purchase of the Jiffy Pak business. In contrast, Shihadeh testified that he received the rent and installment checks, but denied that Halim had delivered the lease with Abdulhalim's signature at that time. In November 2002, Halim personally paid the rent of $2,000. In that same month, Abdulhalim was killed in an auto accident. Enterprise continued to accept the monthly rent paid by Selma through July 2003, when it made written demand that Selma vacate the premises by the end of the following month. In September 2003, Enterprise mailed Selma notice to vacate the premises.
Subsequently, the plaintiff, Enterprise, filed a rule to evict the defendant, Selma, from the premises. After a hearing, the trial court issued a written ruling finding that the purported lease signed by Abdulhalim was ineffectual because it was never signed by anyone on behalf of the plaintiff. The court found that the evidence showed the parties intended a written long-term lease signed by both plaintiff and defendant that never came into fruition and that absent such an agreement, the lease arrangement continued on a month-to-month basis until Abdulhalim received the October 2002 letter from Shihadeh. The court concluded that proper notice had been given and that plaintiff was entitled to a judgment of eviction. Defendant's motion to reopen the case for additional evidence was denied. The court rendered judgment ordering defendant to vacate the premises within 24 hours. Defendant appeals the judgment.

DISCUSSION
The defendant contends the trial court erred in rendering a judgment of eviction ordering defendant to vacate the premises. Defendant argues that because plaintiff prepared the lease and Abdulhalim signed on behalf of defendant, the lease is valid and binding on the parties despite plaintiff's failure to sign.
*655 The essential elements of a contract of lease are the thing, the price and consent. LSA-C.C. art. 2670. Leases may be made either by written or verbal contract. LSA-C.C. art. 2683. A contract is formed by consent of the parties through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances clearly indicates consent. LSA-C.C. art.1927. When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed they do not intend to be bound until the contract is executed in that form. LSA-C.C. art.1947. A party claiming the existence of a contract has the burden of proving that the contract was perfected between himself and his opponent. Pennington Construction, Inc. v. R A Eagle Corp., 94-0575 (La.App. 1st Cir.3/3/95), 652 So.2d 637. The trial court's conclusion that there was no lease with a term between the parties because they envisioned a written contract signed by each party is a finding of fact that may not be disturbed on appeal unless clearly wrong. Baldwin v. Bass, 28,984 (La.App.2d Cir.12/11/96), 685 So.2d 436.
In the present case, Shihadeh testified that after termination of the 1997 lease on March 1, 2002, Abdulhalim repeatedly contacted him about a new lease. Shihadeh stated that he did not want to do business with defendant because of various problems, but told his assistant to prepare a "draft" lease in an attempt to placate Abdulhalim. The draft lease provided for a term of five years with rent of $2,000 per month. Shihadeh testified that a short time later, Abdulhalim telephoned to complain about the rent increase and said he would not agree to the lease. Defendant paid to plaintiff rent of $2,000 for the month of September 2002. Shihadeh testified that on October 22, 2002, he mailed a letter notifying defendant that its month-to-month occupancy of the premises would be terminated because the October 2002 rent had not been paid. Shihadeh stated that he spoke about the letter to Halim, who said he would pay the rent, but that they did not discuss the lease. Shihadeh testified that approximately two weeks after the letter was mailed he met with Halim, who hand delivered a check of $2,000 for the rent and a check of $1,000 as an installment payment for the business. Shihadeh denied that Halim delivered a copy of the new lease with Abdulhalim's signature at the time and stated that he did not see such a document until July 2003.
Halim testified that in June 2002, he discovered that the lease term had expired on March 1, 2002, and that defendant had not exercised its option to renew the lease. Halim stated that he contacted Shihadeh and was assured they would have a new lease when he returned from overseas. Halim testified that his father, Abdulhalim, picked up the new lease in the first week of September 2002 and was upset about the increased rent amount and the lack of a renewal option. Halim stated that he told Shihadeh that some of the lease provisions were unreasonable, but he would not make changes. Halim testified that he showed the lease to an attorney and then told his father to sign, but he did not sign the lease at the time. Halim stated that in October 2002, his mother said Shihadeh was sending a letter of eviction, so Halim convinced Abdulhalim to sign the lease. Halim testified that Shihadeh said that if the October rent was paid and the lease was signed, they could forget about the certified letter he had mailed. Halim stated that on November 1, 2002, he made copies of the lease signed by Abdulhalim and met with Shihadeh at his office. Halim testified that he gave Shihadeh the *656 October rent check and a signed copy of the new lease. Halim stated that Shihadeh signed the lease and said everything would be fine if the rent was paid on time.
Despite Shihadeh's testimony that he no longer wanted to do business with defendant, Shihadeh acknowledged telling Abdulhalim that if he would be a good tenant, "I'd be glad to give you a lease." Consistent with this statement, plaintiff prepared a lease with provisions of its choice and presented the written lease to defendant for review. Where a lessor drafts a lease and presents it to the lessee for signing, the lease is valid and binding upon lessee's acceptance, even if lessor fails to sign. City of New Orleans v. Cheramie, 509 So.2d 58 (La.App. 1st Cir.1987), writ denied, 512 So.2d 463 (La.1987).
Plaintiff argues that defendant could not have believed it was accepting the lease because the October 22, 2002 letter notified defendant there was no valid lease. However, Halim testified that after the letter was sent he contacted Shihadeh, who said that if the October rent was paid and the lease signed, defendant could disregard the certified letter. The subsequent acts of the parties support Halim's statement, since Abdulhalim signed the lease, plaintiff accepted the October and November 2002 rental payments and did not take any follow-up action on its October letter. Thus, defendant could have reasonably believed that the parties were performing under the lease.
Plaintiff further argues that Enterprise was entitled to a presumption that the parties did not intend to be bound until the lease was executed in authentic form. In support of its position, plaintiff pointed out that the parties' prior agreements, the 1997 lease and the 1995 purchase of the business, were authentic acts. However, the testimony shows that after the 1997 lease was signed, the parties developed an informal practice of business dealings. Halim testified that he conducted a number of business conversations by telephone with Shihadeh that were not documented. Shihadeh acknowledged speaking with Halim over the phone regarding his father's efforts to obtain a new lease, about the October 2002 letter and about the possible sale of the business. Thus, the parties' interactions were not defined solely by the written and signed documents.
In addition, Shihadeh testified that his custom and practice as a businessman was to require leases to be signed in the presence of witnesses and a notary public. After the trial, defendant filed a motion to reopen the case to introduce evidence that a lease between plaintiff and a third party was not witnessed or notarized. The trial court erred in denying defendant's motion because that evidence was admissible as impeachment of Shihadeh's testimony that he required leases to be witnessed and notarized.
The record shows that defendant paid rental payments of $2,000 from November 2002 through July 2003 consistent with the new lease provisions. Plaintiff accepted those rental payments during that time period with an awareness of defendant's expectation of a lease with a term. Thus, any presumption that the parties needed to sign the lease to be bound was rebutted by their subsequent performance. Based upon this record, we find that there was agreement between plaintiff and defendant with respect to the terms of the written lease as of November 1, 2002, and the trial court was clearly wrong in finding that the lease did not take effect without the plaintiff's signature. Consequently, we conclude that the trial court erred in ordering the defendant to vacate the premises and we shall reverse that judgment.

*657 CONCLUSION
For the foregoing reasons, the trial court's judgment is reversed and judgment is hereby rendered in favor of Selma, Inc., which is entitled to occupy the premises pursuant to the valid and binding written lease. Costs of this appeal are assessed to the appellee, Enterprise Property Grocery, Inc.
REVERSED AND RENDERED.