RAY, J.
This appeal is the latest in a series of legal challenges beginning in 2011 to efforts by the Florida Department of Corrections to privatize some or all of its functions in the four regions of Florida’s correctional system. At issue is the validity of a contract between the Department and Corizon, Inc., for the provision of comprehensive health services to inmates in Regions I, II, and III for fiscal year 2012-2013. Contrary to the circuit court’s ruling, we conclude that the Department validly entered into the challenged contract with Corizon and that the Joint Legislative Budget Commission’s approval of a budget amendment to provide sufficient funding for the contract was consistent with its constitutional and statutory authority. The circuit court’s order enjoining the implementation of the challenged contract is, therefore, reversed.
I. FACTS AND PROCEDURAL HISTORY
Privatizing the provision of inmate healthcare services has been a focus of both the Legislature and the Department in recent years, resulting in legal challenges that failed to produce judicial prece *1066 dents providing meaningful guidance. In a proviso pertaining to the Department’s health services, the 2011 General Appropriations Act (“GAA”) directed the Department to award contracts to private companies for comprehensive health services in Regions I, II, and III, contingent on a specified cost savings to the state. Ch. 2011-69, § 4, at 119, Laws of Fla. Although the proviso referenced “statewide comprehensive health services,” it expressly excluded Region IV from its reach. Id. A separate proviso, pertaining to the Department’s administration, directed the Department to procure a contract or contracts for the management and operation of the correctional facilities in Region IV, again contingent on a cost savings to the state. Id. at 102-03.
Both provisos were challenged in court early in fiscal year 2011-2012. The first lawsuit, filed in July 2011, asserted that the proviso requiring complete privatization • of Region IV unconstitutionally changed substantive law within an appropriations act in violation of article III, sections 6 and 12, of the Florida Constitution. While that lawsuit was pending, the Department issued requests for proposals (“RFPs”) under the proviso pertaining to Regions I, II, and III. A second lawsuit was filed seeking to declare that proviso invalid under the same constitutional provisions at issue in the first lawsuit, and to enjoin further action under the RFPs.
Meanwhile, looking ahead to fiscal year 2012-2013, the Department submitted its budget request to the Legislature, asking for $93,156,947 to fund contracted inmate health services during that year. Thereafter, the circuit court resolved the first lawsuit by declaring the proviso pertaining to Region IV unconstitutional and enjoining the privatization efforts the Department was making under that proviso. The Department did not appeal, and the order became final without a merits review by this Court.[1] As a result of the circuit court’s determination that the proviso pertaining to Region IV was invalid, the Department amended its budget request for fiscal year 2012-2013, asking that the Legislature transfer funds previously allocated for that specific privatization effort to various other categories. This amendment included a request for appropriations totaling $41,405,554 for health services in Region IV.
As litigation continued in the suit challenging the proviso pertaining to healthcare privatization in Regions I, II, and III, so did the budget process for 2012-2013. The Governor’s recommended budget for 2012-2013 included “a cost savings to General Revenue of $22.9 million, based upon a minimum 7 percent savings associated with privatization of inmate health services for Regions I, II and III.” Likewise, reports from the House Subcommittee on Justice Appropriations and the Senate Subcommittee on Criminal/Civil Justice Appropriations projected savings under a line labeled “Savings Through Privatization of Health Services.”
Fiscal year 2011-2012 ended on June 30, 2012, and the 2012 GAA went into effect on July 1, 2012. Because the lawsuit challenging the proviso pertaining to Regions I, II, and III had not been resolved, it was dismissed as moot due to the circuit court’s determination that the end of the fiscal year effectively repealed the proviso. The Department proceeded with efforts to obtain contracts for the privatization of inmate healthcare statewide under its general contracting authority.
*1067 At this point, the Department was operating under the 2012 GAA, which appropriated $133,996,822 to the Department for “Inmate Health Services” under line item 784. Ch. 2012-118, § 4, at 123, Laws of
Fla. The Legislature restricted a portion of this funding with two provisos. Line item 784, together with its headings and provisos, appears in the GAA as follows:
[[Image here]]

Id.

On July 17, 2012, the Department announced its intent to award a contract to Corizon for comprehensive health services in Regions I, II, and III, and to a separate entity, Wexford Health Sources, Inc., for Region IV. The cost of the Corizon contract to the State would be approximately $230 million, and the Wexford contract, approximately $48 million. The Corizon contract cites line item 784 of the 2012 GAA as its funding source.
Given the disparity in the contract prices and the total appropriation under line item 784, the Department submitted a request to the Joint Legislative Budget Commission (“LBC”) to transfer $57,668,391 to line item 784 from other categories within the “Inmate Health Services” program. The request explained that the Department intended to enter into the contracts pursuant to the authority granted in section 20.315, Florida Statutes (2012), and that the budget amendment would fund the contracts for six months, beginning on January 1, 2013. The Governor recommended approval of the request, and the LBC granted it on September 12, 2012.
Two days later, the Florida Public Employees Council 79, AFSCME (“AFSCME”) and the Federation of Physicians and Dentists/Alliance of Healthcare and Professional Employees (“FPD”) filed a petition for -writ of quo warranto in this Court challenging the Department’s authority to enter both contracts. In pertinent part, AFSCME and FPD argued that the Department lacked the authority to spend state funds on the Corizon contract because the 2012 GAA contains “no specific appropriation for contracting out health services” in Regions I, II, or III, as they contended section 216.313, Florida Statutes (2012), requires. They further argued that “[n]othing in the LBC’s amendment purports to, or lawfully could, create a specific appropriation contrary to the intent of the Legislature itself as expressed in the 2012 GAA.” The petitioners challenged the Wexford contract for other reasons. We transferred the petition to the circuit court, which agreed with the petitioners as to the Corizon contract and with the Department as to the Wex- *1068 ford contract. As a result, the circuit court granted relief in part and enjoined the Department from proceeding under the Corizon contract. This appeal followed.
II. ANALYSIS
Our analysis of the Department’s authority to enter the Corizon contract turns on an interpretation of statutes and the Florida Constitution and an application of those laws to undisputed facts. Our review, therefore, is de novo. Garcia v. Andonie, 101 So.3d 339, 343 (Fla.2012) (constitutional interpretation); Fla. Dep’t of Envtl. Protection v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1266 (Fla.2008). To provide a background for our discussion of section 216.313 and the Legislature’s intent to allow privatization of inmate health services, we first consider the extent of the Department’s general authority to enter into contracts on behalf of the state. After concluding that the Department’s general authority is broad, we consider whether section 216.313 presents an impediment to the Department’s reliance on that authority for the purpose of the Corizon contract. Finally, because the circuit court invalidated the contract in part because it concluded the LBC lacked the authority to amend the budget, we address whether the amendment was consistent with legislative intent and policy and properly limited, concluding that it met both standards.

A. The Department’s Authority to Contract for Health Services

The Department has a constitutional and statutory imperative to provide adequate health services to Florida inmates.[2] As the circuit court recognized, the Department has both express and implied authority to enter into contracts to carry out this critical mandate. As a general rule, an agency has the implied authority to enter into contracts that are, “as a matter of practicality,” required by their duties. Pan-Am Tobacco Corp. v. Dep’t of Corr., 471 So.2d 4, 5 (Fla.1984). The Department’s contracting authority is most readily apparent, however, from the explicit language of section 20.315(12), Florida Statutes (2012):
Whenever possible, the department, in accordance with the established program objectives and performance criteria, may contract for the provision of services by counties, municipalities, nonprofit corporations, and other entities capable of providing needed services, if services so provided are more cost-efficient, cost-effective, or timely than those provided by the department or available to it under existing law.
The clear and unambiguous language of this statute vests the Department with broad authority to contract for needed services such as inmate health care when the services can be provided more efficiently, economically, or timely than those provided by the Department or available to it under existing law.
Other statutes reveal that the Legislature has not only authorized the Department to engage in contracts for health services, but also has taken steps to facilitate such arrangements. See, e.g., § 945.025(4), Fla. Stat. (2012) (exempting certain health-services contracts from competitive bidding); § 768.28(10)(a), Fla. Stat. (2012) (extending sovereign immunity to healthcare providers and vendors that *1069 contract with the Department to provide services to prison inmates). That the contract at issue is for comprehensive, as opposed to discrete, health services does not remove the Department’s authority for it.

B. The “Specific Appropriation” Requirement in Section 216.313, Florida Statutes (2012)

Given the Department’s broad authority to enter into contracts to carry out its duty to provide health services to inmates, a contract for comprehensive health care in a particular region is valid absent a legislative directive to the contrary. Cf. Am. Home Assur. Co. v. Nat’l R.R. Passenger Corp., 908 So.2d 459, 475 (Fla.2005) (recognizing that municipalities’ broad power under the Florida Constitution allows them to exercise any power for a municipal purpose except where expressly prohibited by law). The circuit court found such an impediment in section 216.813. With an exception not applicable to this case, section 216.313 prohibits the Department from entering into a contract for the purchase of services in excess of $5 million “unless the contract identifies the specific appropriation of state funds from which the state will make payment under the contract in the first year of the contract.” (emphasis added). Whether the Corizon contract complies with this condition depends on whether the contract’s identification of “Line Item 784, General Appropriations Act, 2012” as its funding source satisfies the “specific appropriation” language in the statute.
In making this assessment, we turn to familiar principles of statutory construction. “[W]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Atwater v. Kortum, 95 So.3d 85, 90 (Fla.2012) (internal citations omitted). In an effort to “ascertain and give effect to the intention of the Legislature as expressed in the statute,” City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla.1984), courts should give words in a statute their ordinary and everyday meaning unless the context reveals that a technical meaning applies. State v. Brown, 412 So.2d 426, 428 (Fla. 4th DCA 1982); see Variety Children’s Hosp., Inc. v. Perkins, 382 So.2d 331, 337 (Fla. 3d DCA 1980) (applying, as “one of the most basic rules of statutory construction,” the principle that “words, particularly technical ones, must be interpreted in the specific context in which they are used”); Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1246-47 (11th Cir.2008) (“When Congress employs a term of art, it presumptively adopts the meaning and ‘cluster of ideas’ that the term has accumulated over time.”). In particular, when the Legislature uses an undefined term with a fixed legal meaning fitting the context, that meaning governs.. See Perkins, 382 So.2d at 337 (interpreting the word “abate” according to the settled legal concept of abatement of an action because, in using the word, the Legislature “spoke in technical terms of the abatement doctrine”); 48A Fla. Jur. Statutes § 139 (“[Tjechnical words and phrases that have acquired a peculiar and. appropriate meaning in law cannot be presumed to have been used by the legislature in a loose, popular sense. To the contrary, they are presumed to have been used according to their legal meaning.”); 2A Norman Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Constructions § 47:29 (7th ed. 2007).
When used in a statute relating to the state budget, “specific appropriation” is a term of art meaning “an identifiable, integrated fund which the legislature has allocated for a specified purpose.” See *1070 Brown v. Firestone, 882 So.2d 654, 668 (Fla.1980) (defining “specific appropriation” as the term is used in the Florida Constitution’s provision allowing the governor to “veto any specific appropriation in a general appropriation bill”). This technical term of budget nomenclature embodies essentially the same concept as the term “line item” and can be either quite broad or very specific. Id. The Florida Supreme Court has offered the following illustration:
[I]f the legislature deems it expedient to allocate $50,000,000 to the Department of Corrections without breaking the allocation down to its components, then that lump sum would be a specific appropriation under article III, section 8(a). Conversely, if the legislature allocated $1,000,000 of the $50,000,000 to maintenance of the corrections system, then that would be considered a specific appropriation. In each instance the legislature has designated an identifiable, integrated fund for a specified purpose.
Id. Explaining this example, the court noted, “The fact that in one case the designation is broad and in the other specific is a matter of legislative judgment as to the requirements of each funding project.” Id.
The Legislature may choose to restrict a specific appropriation by proviso, which is “language that qualifies or restricts a specific appropriation and which can be logically and directly related to the specific appropriation.” § 216.011(1)(⅞), Fla. Stat. (2012). Thus, a “specific appropriation” is distinct from and broader than a “proviso.” Nevertheless, “when proviso language expressly breaks the line item into a definite unit intended for a stated purpose,” the proviso is, for all practical purposes, a specific appropriation. Fla. House of Representatives v. Martinez, 555 So.2d 889, 843 (Fla.1990).
The challenged contract in this case identifies line item 784 as the specific appropriation for its funding. This line item appropriates approximately $134 million for “Inmate Health Services.” The two attached provisos cumulatively restrict roughly $41.5 million from the funds in “Specific Appropriation 784” for their stated purposes, thereby allocating to the Department more than $92 million in otherwise non-restricted funds for the provision of inmate health services.
Line Item 784, in character and name, is a specific appropriation of funds for the purpose of “Inmate Health Services.” By designating that appropriation as its funding source, the Corizon contract satisfied Section 216.313’s requirement to disclose the specific appropriation from which payment will be made. In ruling to the contrary, the circuit court unduly emphasized the word “specific” as a modifier to “appropriation” — effectively requiring an explicit authorization for the privatization in the GAA. But in the context of the statute at issue, the term “specific appropriation” is an indivisible, technical concept embodying varying degrees of specificity. Indeed, the Legislature’s labeling of line item 784 as “Specific Appropriation 784” indicates that the Legislature recognized the interchangeability of the concepts “line item” and “specific appropriation.” Because line item 784 is a specific appropriation for the broad category of “Inmate Health Services,” the Department’s decision to use the available funds in that line item for a comprehensive health services contract in Regions I, II, and III does not violate section 216.313, even though the privatization of health services for those regions is not specifically mentioned in the GAA.

C. Authority for the Joint Legislative Budget Commission’s Amendment to the 2012 General Appropriations Act

The LBC’s decision to supplement line item 784 with sufficient funds for the Cori- *1071 zon contract was also proper. The LBC is a constitutional body composed of equal numbers of senators and representatives that exists “within the Legislature” to make “limited adjustments” to the state budget without the concurrence of the full Legislature. Art. Ill, § 19(c)(3), (j), Fla. Const.[3] It serves as a practical and oftentimes necessary mechanism for oversight and modification of the budget in the interim between legislative sessions.
The Florida Constitution directs the Legislature to “prescribe by general law conditions under which limited adjustments to the budget, as recommended by the governor or the chief justice of the supreme court, may be approved without the concurrence of the full legislature.” Art. Ill, § 19(c)(3), Fla. Const. Section 216.181(2), Florida Statutes (2012), specifies those conditions in comprehensive detail. Before submitting a request to the LBC from within their respective branches of government, the Governor or the Chief Justice must ensure that these conditions are met, and the LBC must undertake the same considerations before giving final approval. § 216.181(2). Contrary to the determinations of the Governor and the LBC in this case, the circuit court ruled that the amendment at issue failed to comply with the condition specified in section 216.181(2)(a), which requires “consisten[cy] with legislative policy and intent,” and that it was otherwise invalid as more than a limited adjustment.
On both requirements, the LBC has expertise as an entity composed exclusively of legislators that is charged with the inherently legislative function of appropriations. Given the LBC’s expertise and unique role within the Legislature, the LBC is entitled to deference in administering its budget-adjustment authority. Cf. Gulf Coast Elec. Coop., Inc. v. Johnson, 727 So.2d 259, 261-62 (Fla.1999) (extending substantial deference to the Public Service Commission due to its “specialized knowledge and expertise”); Big Bend Hospice, Inc. v. Agency for Health Care Admin., 904 So.2d 610, 611 (Fla. 1st DCA 2005) (recognizing that an agency is entitled to deference in its interpretation of a statute it is charged to administer). . In approving the budget amendment, the LBC — acting on behalf of the legislative branch — agreed with the executive branch that the budget adjustment was “consistent with legislative policy and intent.” The circuit court should have accorded deference to this judgment.
It appears that the court’s conclusion that the LBC amendment contravenes the legislative policy and intent expressed in the 2012 GAA was based primarily on the proviso concerning the $41 million earmarked for privatization of Region IV. The court applied the maxim expressio unius est exclusio alterius to conclude that the Legislature did not intend to fund the privatization of Regions I, II, and III. This maxim, meaning “the expression of one thing implies the exclusion of the other,” is “strictly an aid to statutory construction and not a rule of law.” Smalley Transp. Co. v. Moed’s Transfer Co., 373 So.2d 55, 56 (Fla. 1st DCA 1979). The correctness of the principle as applied to a particular statute “depends entirely on context,” In re Sealed Case No. 97-3112, 181 F.3d 128, 132 (D.C.Cir.1999), including the history *1072 and structure of the legislation being examined, see In the Matter of Am. Reserve Corp., 840 F.2d 487, 492 (7th Cir.1988). Its use must be governed by common sense, such that it should not be applied to defeat the “natural and obvious sense” of a statute’s provisions. The Federalist No. 83, at 495-96 (Alexander Hamilton) (Clinton Rossiter ed., 1961). In fact, this maxim properly applies only when the court can determine that the matters expressly mentioned are intended to be exclusive. Smalley, 373 So.2d at 57 (quoting Ford v. United States, 273 U.S. 593, 612, 47 S.Ct. 531, 71 L.Ed. 793 (1927)). For these reasons, it has been deemed “a valuable servant, but a dangerous master to follow in the construction of statutes or documents.” Id.[4]
Here, the expressio unius maxim is inapplicable, particularly in light of the Department’s clear statutory authority to contract with private vendors for comprehensive health services. While the proviso plainly addresses $41,405,554 of the $133,996,822 allocated in line item 784 for inmate health services, it places no restriction on the remaining $92,591,268 in that specific appropriation. The proviso is not intended as an exhaustive and detailed list of how to utilize the funds in the broad category specified in line item 784; rather, it merely limits the total amount that can be spent on contracted inmate health services in Region IV, leaving the remainder for the Department’s administration. Cor-izon illustrates this point compellingly by emphasizing that the circuit court’s reasoning would support a conclusion that the $100,000 earmark of funds for Hepatitis B vaccinations precludes the Department from funding Hepatitis A vaccinations from the remaining appropriation in line item 784. Due to the limited purpose of the proviso addressing Region IV, that language is not helpful in determining whether providing additional funds for privatization of health services in Regions I, II, and III is consistent with legislative policy and intent.
The GAA itself is silent on whether the Department may use its budget for inmate health services to contract for comprehensive health services in Regions I, II, and III. Outside the GAA, however, there is ample evidence, not only that the Department was authorized to privatize inmate health services, but that the Legislature intends for such privatization to occur.
The Florida Statutes, the clearest expression of legislative intent, give the Department broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. See § 20.315(12). They further facilitate, and arguably encourage, these arrangements by exempting certain health services contracts from competitive-bidding requirements and extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates. See §§ 945.025(4), 768.28(10)(a).
Legislative intent to privatize inmate health services statewide is no less evident from the road traveled by the Legislature to date to implement this priority. The Legislature jump-started the privatization of inmate health care in Regions I, II, and III in 2011, through a proviso expressly directing the Department to solicit bids for healthcare services in those regions. See *1073 Ch. 2011-69, § 4, at 119-20, Laws of Fla. Even though that proviso was no longer in effect at the close of the 2011-2012 fiscal year, it is relevant to show that the Legislature’s only direct expression of intent on this subject in the GAA weighs in favor of the Department’s decision to privatize. The Department and Corizon make the logical point that the Legislature’s failure to include a proviso concerning Regions I, II, and III in the 2012 GAA was likely due to the fact that the privatization of health services in those regions and the contract solicitation and award process were already underway when the budget was composed. However, because the proviso in the 2011 GAA for complete privatization of Region IV had been declared unconstitutional, the Legislature addressed Region IV in the budget for the 2012-2013 fiscal year. With this factual background, combined with the Governor’s recommended budget and reports from legislative subcommittees, the LBC’s decision to approve the amendment was well-grounded.
While this appeal was pending, the Legislature made its intent even clearer by appropriating $278,496,445 to the special category “Inmate Health Services” for fiscal year 2013-2014 and funding only 136.5' positions under the program “Inmate Health Services.” Ch. 2013-40, Laws of Fla. These figures show a substantial increase in funding for inmate health services over what was provided in the 2012 GAA, and a substantial decrease in the funding of the Department-based positions for inmate health services. Compare Ch. 2012-118, § 4, at 123 Laws of Fla. with Ch. 2013-40, Laws of Fla. The funding for the special category “Inmate Health Services” in fiscal year 2013-2014 exceeds the combined prices of the Wexford and Corizon contracts by only $179,031. Therefore, the 2013 GAA confirms our view that the Legislature fully intended for the Department to contract for comprehensive health services statewide. See Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So.2d 1216, 1230 (Fla.2006) (recognizing that a court “may look to acts passed at subsequent sessions to discern legislative intent”). We disagree with the circuit court’s contrary view.
The remaining question is whether the amendment was limited. Although the amendment added substantial funding to line item 784, in context, it is a limited adjustment. The LBC simply moved funds from different line items within the Department’s “Health Services” program, providing additional funds for contracts that the Department otherwise had the authority to enter. Because the amendment complied with the statutory limitations of section 216.181, we have no basis to question the LBC’s determination that the amendment requested by the Department and recommended by the Governor was consistent with legislative intent and limited enough to fall within the LBC’s constitutional authority.
III. CONCLUSION
For these reasons, we reverse the portion of the order enjoining the Department from implementing the Corizon contract.
REVERSED.
BENTON, C.J., and MAKAR, J., concur.

. The Florida Attorney General attempted to appeal the order, but this Court dismissed the case for lack of standing because the Attorney General was not a party to the proceedings in the circuit court. Bondi v. Tucker, 93 So.3d 1106 (Fla. 1st DCA 2012).

. See Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); § 945.025(1), Fla. Stat. (2012) (assigning the Department the responsibility to provide the "supervisory and protective care, custody, and control of the inmates’’); § 945.025(2), Fla. Stat. (2010) (mandating that inmates' ”[m]edical, mental, and psychological problems ... be diagnosed and treated whenever possible”).

. The LBC is composed of seven members of the Senate, appointed by the President of the Senate, and seven members of the House, appointed by the Speaker of the House of Representatives. § 11.90, Fla. Stat. (2012); see also Art. Ill, § 19(j), Fla. Const. The LBC is not permitted to consider an amendment unless either the Governor or the Chief Justice of the Florida Supreme Court first approves the request. See § 216.181(1), Fla. Stat. (2012).

. One court has declared this maxim "at best a description, after the fact, of what the court has discovered from context.” United States v. Castro, 837 F.2d 441, 443 n. 2 (11th Cir.1988). Another court has explained, "[T]he expressio unius principle describes what we usually mean by a particular manner of expression, but does not prescribe how we must interpret a phrase once written.” Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1313 (9th Cir.1992).